EGAN, C. J.
*528 Defendant appeals a judgment of conviction for driving under the influence of intoxicants (DUII), ORS 813.010.[1] We write solely to address defendant's first assignment of error: that the trial court erred when it overruled an objection to a statement by the prosecutor during closing arguments. Defendant contends that the statement improperly shifted the burden of proof from the state to defendant. For the reasons below, we affirm.
Burns Police Officer Brewer stopped defendant's vehicle because he saw it cross over the fog line. Brewer told defendant that he had failed to stay within his lane. Defendant, who had two passengers in his car, told Brewer, "We were just bullshitting." Brewer asked defendant for his license, registration, and proof of insurance. Brewer noticed that defendant's speech was slurred and his eyes were red, watery, and bloodshot. Brewer also smelled the odor of alcohol. Brewer asked defendant if he had consumed any alcohol, and defendant said that, earlier that day, he had drank one beer with a cheeseburger. Brewer returned to his vehicle to check defendant's driving status and to call for backup to help conduct a DUII investigation.
Next, Brewer asked defendant to step out of the car. Defendant did, but he stumbled and had to use the bed of the pickup to hold himself up. Brewer could smell a strong odor of alcohol coming from defendant's breath. When Deputy Heatherwick arrived as backup, she saw defendant swaying while he was standing. Brewer asked defendant if he would be willing to perform field sobriety tests. Defendant initially asked why he had to do that, but after Brewer again described the observations he had made and explained that he thought defendant might be too impaired to drive, defendant said, "What do you want me to do?" Brewer understood that as an agreement to do the tests.
Before beginning the tests, defendant told Brewer that he had a bad left knee. Brewer first administered a *529 horizontal gaze nystagmus test. Defendant turned his head contrary to Brewer's instructions and held his breath because Brewer "didn't tell him he could breathe." Ultimately, defendant exhibited *401 six out of six possible signs of impairment on that test. Brewer next began to administer the walk-and-turn test. However, defendant was unable to stay in the instructed position long enough to hear Brewer's instructions and watch a demonstration. Defendant also started the test before he was told to do so, was unable to walk heel-to-toe according to Brewer's directions, and raised his hands more than six inches away from his sides. During the test, defendant stopped and told Brewer that he was "having problems with his left knee" and "didn't think he could do the test on uneven ground." Brewer did not believe the ground was uneven and did not "notice any mounds or pot-holes or anything like that." But defendant said he "didn't feel comfortable taking the test," so Brewer stopped the test before defendant had completed it. Next, Brewer began to administer the one-leg stand, which involves standing on one leg for 30 seconds. Defendant put his foot down within 10 seconds and asked Brewer, "Why don't you just take me in?"
At that point, Brewer asked defendant if he would "be willing to perform a couple of other tests that weren't as physical because of the complaints of his knee"-a counting test and an alphabet test. Defendant completed the tests but made mistakes in both. "Putting everything together," Brewer believed defendant was "too impaired to be operating a vehicle," so he arrested him for DUII and took him to the Harney County Jail. At the jail, Brewer asked defendant to take a breath test and advised him of the consequences for refusing to take the test. Defendant refused to take the test and said, "I had a beer with my cheeseburger. I can't pass the test."
Defendant pleaded guilty to the violation of refusing to take a test for intoxicants, ORS 813.095, and went to trial on the charge of DUII. At trial, Brewer and Heatherwick testified. During closing arguments, the state emphasized that defendant did not complete two of the field sobriety tests. The prosecutor argued:
*530 "He doesn't complete the walk-and-turn. He chooses to not-he chooses to keep that evidence from the jury. He doesn't complete the one-leg stand. He chooses to keep that evidence from the jury."
Defendant objected and asked the trial court to strike the prosecutor's two statements "about [defendant] actively hiding evidence from the jury." Defendant explained:
"I think [the prosecutor is] shifting the burden here. I mean, the defendant is under no obligation whatsoever to produce any evidence at all, and to say that he is trying to hide the ball here I think is an improper argument, and I'd like the jury instructed appropriately."
The trial court overruled defendant's objection, because the court did not think the prosecutor's statements amounted to "a shifting of the burden of proof." A jury subsequently found defendant guilty of DUII.
On appeal, defendant renews the argument he made below. Defendant contends that, in stating that defendant chose to keep evidence from the jury by refusing to complete field sobriety tests, the prosecutor "misstated the law," because those statements shifted the burden of proof to defendant. Furthermore, defendant argues that the prosecution's argument was likely to have affected the jury's verdict, and thus, that the trial court's ruling requires reversal. In response, the state contends that the prosecutor's argument did not improperly shift the burden of proof to defendant and that, even if it did, the trial court's error was harmless. Because we agree with the state's first contention, we do not reach the harmless error argument.
"The law presumes every defendant upon trial charged with crime to be innocent, and it devolves upon the prosecution to prove by evidence to the satisfaction of the trial jury beyond a reasonable doubt, that the defendant committed the crime charged in the indictment." State v. Rosasco , 103 Or. 343, 357, 205 P. 290 (1922). In arguing that the state has met its burden to prove all elements of a crime beyond a reasonable doubt, a prosecutor "may attempt *531 to persuade the jury that it should believe one version of the events and not another." State v. Purrier , 265 Or. App. 618, 620-21, 336 P.3d 574 (2014). However, the prosecutor "must *402 not inappropriately characterize the jury's fact-finding function in a manner that raises some realistic possibility of confusing the jurors about the ultimate standard or burden of proof." Id. at 621, 336 P.3d 574. For example, a prosecutor cannot "implicitly or explicitly invite the factfinder to consider nonadmitted evidence in aid of the state's case." State v. Spieler , 269 Or. App. 623, 641, 346 P.3d 549 (2015) (internal quotation marks omitted). Nor may a prosecutor, except in rare circumstances, refer to "the defendant's silence or failure to testify[.]" Id. at 641-42, 346 P.3d 549 (noting that only in some trial settings, such as after a defendant's assertion of an affirmative defense, may a prosecutor comment on the defendant's failure to meet a burden of production or persuasion).
We review a trial court's decision to overrule an objection to closing arguments for abuse of discretion. See State v. Logston , 270 Or. App. 296, 303, 347 P.3d 352 (2015) ("[C]ontrol of counsels' arguments is within the discretion of the trial court."); State v. Worth , 231 Or. App. 69, 74, 218 P.3d 166 (2009), rev. den. , 347 Or. 718, 226 P.3d 709 (2010) (standard of review of a trial court's decision to deny a mistrial due to a prosecutor's conduct is abuse of discretion); A trial court's discretion "is not unbounded." State v. Lundbom , 96 Or. App. 458, 461, 773 P.2d 11, rev. den. , 308 Or. 382, 780 P.2d 735 (1989). If "an argument was improper, properly challenged, and likely to prejudice the jury unfairly[,]" upon review, we must reverse. Logston , 270 Or. App. at 303, 347 P.3d 352. However, in conducting this review, we view statements made by a party during argument in context, not in a vacuum. Purrier , 265 Or. App. at 621, 336 P.3d 574.
Defendant contends that the prosecutor's two statements-that defendant "[chose] to keep evidence from the jury" when he failed to complete two nontestimonial field sobriety tests-shifted the burden of proof from the state to defendant and thus "misstated the law." After viewing the statements in context, we conclude that the trial court did not abuse its discretion in overruling defendant's objection to them.
*532 We first note that a defendant's refusal to perform nontestimonial field sobriety tests[2] is admissible, and furthermore, that the state may use such a refusal to prove that the defendant believed the results would be incriminating. See State v. Adame , 261 Or. App. 11, 18-19, 21, 323 P.3d 282, rev. den. , 355 Or. 703, 330 P.3d 629 (2014). In this case, the prosecutor's statements related not to defendant's refusal to perform nontestimonial tests, but to his refusal to complete them. During closing arguments, for the first and only time, the prosecutor characterized that refusal as defendant "choos[ing]" to keep evidence from the jury.
Defendant argues that the prosecutor's comment shifted the burden to defendant to produce evidence of his sobriety. Understood in context, however, the prosecutor's comment did not shift the burden of proof. In context, the comment implied that, in failing to complete the field sobriety tests, defendant was attempting to prevent the creation of evidence to be used against him. That is, the comment attempted to get jurors to make the logical inference, from defendant's failure to complete the field sobriety tests, that defendant believed that results of those tests would be incriminating. In addition, at the beginning of his closing argument, the prosecutor told the jury, "the question that you're to be resolving today is did the [state] prove beyond a reasonable doubt each of [the *403 elements of the crime of DUII]." Furthermore, the court instructed the jury regarding the state's burden of proof four times: at the beginning of voir dire , during voir dire , in the preliminary instructions, and in the final jury instructions. Each time, the *533 court reiterated that the burden is on the state to prove the guilt of the defendant beyond a reasonable doubt. In light of this context, we conclude that the prosecutor's statements did not misstate the law and did not impermissibly shift the burden of proof. Therefore, we hold that the trial court did not abuse its discretion in overruling the defense objection to the prosecutor's statements, and thus, we affirm.
Affirmed.

ORS 813.010 was amended in 2017, but those amendments are immaterial to the issue on appeal. See Or. Laws 2017, ch. 21, § 80 (2017). Thus, we refer to the current version of the statute in this opinion.

The principles that the Supreme Court recently discussed in State v. Banks , 364 Or. 332, 342, 434 P.3d 361 (2019), may limit the admissibility of a driver's refusal to perform field sobriety tests in some circumstances. In that case, the court explained that, although "the invocation of a constitutional right cannot be admitted at trial as evidence of a defendant's guilt * * *, no similar bar applies when an officer seeks only a driver's physical cooperation in conducting a constitutionally authorized search." Id. ; see State v. Nagel , 320 Or. 24, 30-33, 880 P.2d 451 (1994) (field sobriety tests are searches for which a warrant is required under Article I, section 9, of the Oregon Constitution ; there is an exception to the warrant requirement for a "search conducted with probable cause and under exigent circumstances"). Here, defendant has not argued that the state's reference to his refusal to complete nontestimonial field sobriety tests was an impermissible comment on his invocation of a constitutional right and we express no opinion on how such an argument would fare on this set of facts.