Submitted January 26, reversed and remanded June 22, petition for review allowed November 2, 2023 (371 Or 511)
See later issue Oregon Reports

# STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

# JEFFERY JERALD SKOTLAND,
*Defendant-Appellant.*

## Washington County Circuit Court
19CR77935; A176291

### 533 P3d 55

Defendant challenges his convictions for unlawful purchase of a firearm, ORS 166.425; false information in connection with the transfer of a firearm, ORS 166.416; and attempted felon in possession of a firearm, ORS 166.270 and ORS 161.405. He assigns error to the trial court's ruling before closing arguments that, as he argues, permitted the state to shift the burden of proof. The state contends that defendant's arguments are not preserved and that, regardless, the state did not shift the burden of proof in closing arguments. *Held*: The trial court erred. The trial court's ruling permitted the prosecutor to comment on defendant's failure to present evidence regarding his mental state, which raised a "realistic possibility of confusing the jurors about the ultimate standard or burden of proof." *State v. Totland*, 296 Or App 527, 531, 438 P3d 399, *rev den*, 365 Or 502 (2019). That error was not harmless, as it related to the core of defendant's defense.

Reversed and remanded.

Erik M. Buchér, Judge.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Stacy M. Du Clos, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Jordan R. Silk, Assistant Attorney General, filed the brief for respondent.

Before Tookey, Presiding Judge, and Egan, Judge, and Kamins, Judge.

EGAN, J.

Reversed and remanded.

Kamins, J., dissenting.

**EGAN, J.**

In this criminal case, defendant appeals from a judgment of conviction for unlawful purchase of a firearm, ORS 166.425 (Count 1), false information in connection with the transfer of a firearm, ORS 166.416 (Count 2), and attempted felon in possession of a firearm, ORS 166.270; ORS 161.405 (Count 3). In his first two assignments of error, defendant argues that the trial court improperly allowed the state to shift the burden of proof in closing argument by suggesting that defendant had a burden to (a) identify the attorney on whose advice he had relied in purchasing a firearm; and (b) produce copies of the relevant paperwork.[1] For the reasons that follow, we conclude that the trial court erred in its ruling before closing arguments, which permitted the prosecutor's arguments that raised a "realistic possibility of confusing the jurors about the ultimate standard or burden of proof." *State v. Totland*, 296 Or App 527, 531, 438 P3d 399, *rev den*, 365 Or 502 (2019). We further conclude that that error was not harmless. Accordingly, we reverse and remand.

## I.   FACTS

Defendant has two prior felony convictions for second-degree theft in the State of Washington from 1993 and 2008. In October 2019, defendant went to Bi-Mart and filled out and submitted a "Firearms Transaction Record (ATF Form 4473)" form generated by the United States Bureau of Alcohol, Tobacco, and Firearms (ATF) for the purchase of a firearm. The form required a description of the make, model, serial number, type, and caliber or gauge of the firearm to be purchased. On the form, defendant answered "no" to the question whether he had been convicted of a felony.

A Bi-Mart employee, Simmons, submitted the form to the Oregon State Police (OSP). While waiting, defendant

---

[1] In a third assignment of error, defendant argues that the trial court erred in refusing to provide an "impossibility" instruction. Given our reversal based on the first two assignments of error, we do not address that assignment of error. *See State v. Cuffy*, 322 Or App 642, 643, 521 P3d 516 (2022) ("Finally, we do not reach defendant's two supplemental assignments of error challenging the jury instructions on Counts 1 and 2 because our disposition on Counts 1 and 2 based on the evidentiary error obviates the need to do so.").

told Simmons that he was "a bit worried that it might not go through" because defendant said there was "an issue with trespassing or something and that he had it absolved through court though, and that he should be okay to buy a firearm." OSP denied defendant's background check.

After denying the background check, OSP dispatched the Hillsboro Police Department, and Officer Patenaude began to investigate the firearm purchase denial. Patenaude went to Bi-Mart to collect the ATF form and review it, and he also spoke to Simmons. Patenaude then went to defendant's home and asked defendant about his application. Defendant said he thought OSP denied his application because his license was suspended, but defendant also said that his license was not suspended anymore. Patenaude asked defendant if he had ever been convicted of a felony, and defendant answered no. Eventually, defendant admitted that he had been convicted of a felony in Washington in 1996. Patenaude asked defendant if he remembered a 2007 conviction, and defendant said that he did not know that it was a felony. Defendant told Patenaude that he had "just got done with some lawyer stuff, and it was supposed to be all wiped away." Defendant did not tell Patenaude his lawyer's name.

The state charged defendant with unlawfully purchasing a firearm, ORS 166.425; providing false information in connection with a transfer of a firearm, ORS 166.416; and attempted felon in possession of a firearm, ORS 166.270. Defendant was tried by a jury. Before opening statements, the trial court gave preliminary instructions and explained to the jurors that "defendant is innocent of any crime unless and until the state proves the defendant's guilt beyond a reasonable doubt."

After the state's case-in-chief, defendant testified. He said that before this incident, he had been working on expunging his records for four or five months and had completed the paperwork for expunging the Washington convictions with help from an attorney. Defendant "assumed or was hoping" that he was eligible to buy a gun three or four months after filling out the expungement paperwork. Defendant also testified that when he filled out the ATF

form, he did not want to purchase a gun, but he wanted to see if he was eligible to buy one for his job. He said that other gun owners had told him that the only way to find out if he was eligible to purchase a firearm was to try to buy a gun. When asked whether his attorney had given him the "go ahead" to purchase a firearm, defendant testified that he did not receive that confirmation, and he "just got impatient because [he] was told to wait[,] *** and [he] thought maybe it was time." Defendant testified that he did not "want to spend more money to see if it was okay to go get a gun."

On cross examination, the state asked defendant to identify the attorney he had worked with to expunge his records. Defendant said "[i]t's irrelevant," and he invoked attorney-client privilege. Defendant also testified that he did not have a copy of the expungement paperwork in his possession and that his house had caught on fire, so he had lost everything that he owns.

Before closing arguments, defendant made a "preemptive objection" to prevent the state from shifting the burden of proof to defendant regarding defendant's expungement claims:

"So I do want to just make a preemptive kind of objection just to make sure we're not getting into an issue that comes up during closing.

"Not that I'm assuming the state's going to do anything, but I see the potential that the state could be saying that if the defense is going to rely that my client spoke to an attorney, we should be bringing in that attorney. We should bring in whatever documents for the expungement.

"I didn't print the case out, but there's one from just a few months ago. It was very specific that that is improper argument. It's the state's burden. I don't have to present anything, and they can't stand up and say I should have brought stuff in, so—including witnesses."

The trial court agreed, but it also said that the state "can comment on things [defendant] did state, though[,] *** because that's not burden shifting because it's just talking about the facts in evidence." The trial court provided examples of permissible and impermissible arguments:

"But [the prosecutor] could say things like, '[h]ey, the defendant was testifying, and he didn't say the attorney's name, and he didn't have to, but he could have if he wanted to, you know, because he was asked about that.'

"I told him you could—you can say the name if you want to. I'm not requiring it because I can't, but you can if you want to. And he decided not to.

"You can't say that he should have brought in the attorney. He should have brought in the paperwork or whatever. Yeah. You can just talk about how—what happened on the stand—and he talked about. You said, did you have the stuff with him now—with you now, and he said no. Right?"

The prosecutor said that the state "intended to say that we don't have that before us." To which, the trial court added, "Right, we don't. Exactly. And you can talk about that." The state added that it "was not going to say that [defendant] should have or that [defendant] could have" brought in defendant's expungement attorney or documents. The trial court replied,

"Exactly. Like, '[t]his guy could have brought this stuff in with him.' We're just like, 'No, no, no. He's not required to,' but, yeah.

"But you can talk about what he testified to and exactly—you know where that fine line is, but as long as it's not burden-shifting, you'll be totally fine."

Before closing arguments, the trial court again instructed the jury on the burden of proof: "The defendant is innocent unless and until the defendant is proven guilty beyond a reasonable doubt. The burden is on the state and the state alone to prove the guilt of the defendant beyond a reasonable doubt."

In closing, the state argued:

"He claimed that he filled out a bunch of paperwork in the state of Washington. We don't have that paperwork here today. He claims that the paperwork was lost in a fire, or his dog ate it, or we don't know. But perhaps it doesn't exist.

"He also claims that an attorney, who he refused to name, told him that he could mark 'no' on the ATF form. And that's what he told officers when he was confronted.

"But, today, he said that attorney who he refuses to name told him that he needed to wait. So which is it? Was he told to wait, or * * * was he told he was good to go ahead and write 'no'?

"We don't know who that attorney is or if that attorney exists because he refuses to tell us."

Defense counsel did not object to the prosecutor's argument, and the trial court did not interject. In closing argument, defense counsel argued that the burden of proof is on the state, and "[s]o this idea that '[w]ell, we don't have the expungement paperwork. We don't know who the attorney is.' It's left to the state to disprove any defenses."

Ultimately, the jury found defendant guilty on all three charges.

## II.   ANALYSIS

As an initial matter, we address whether defendant preserved his first two assignments of error. As noted above, on appeal, defendant argues that the trial court erred by allowing the state to shift the burden of proof in closing arguments by commenting on defendant's failure to (1) identify the attorney on whose advice he had relied in filling out the ATF form and (2) produce copies of the relevant expungement paperwork. Those are improper assignments of error because they do not "identify *precisely* the legal, factual, or other *ruling* that is being challenged." ORAP 5.45(3) (emphases added). Generally, noncompliance with ORAP 5.45 "renders the claim of error unreviewable on appeal." *Village at North Pointe Condo. Assn. v. Bloedel Constr.*, 278 Or App 354, 359-60, 374 P3d 978, *adh'd to as modified on recons*, 281 Or App 322, 383 P3d 409 (2016) (citations omitted). But "if a claim of error is discernible from the opening brief, we will typically address it, notwithstanding noncompliance with ORAP 5.45." *Timber Town Living v. Dept. of Human Services*, 320 Or App 154, 158, 513 P3d 28, *rev den*, 370 Or 602 (2022) (citing *Village at North Pointe Condo. Assn.*, 278 Or App at 361).

Here, defendant's arguments in support of preservation and harmless error identify a ruling sufficient for our review. According to defendant, the trial court's ruling on his "preemptive objection" to the prosecutor shifting the burden of proof during closing arguments was in error because the trial court's ruling permitted the prosecutor to shift the burden of proof: "[D]efendant's motion was sufficient to afford the trial court an opportunity to rule correctly, and defendant was not required to renew his objections when the prosecutor later made arguments *the trial court ruled would be permissible*." (Emphasis added.) In addition, when discussing harmless error, defendant argues that "the trial court's failure to *** properly tailor its ruling at the outset *** was not harmless." Thus, defendant argues in his opening brief that the trial court's ruling on his "preemptive objection" was erroneous because it enabled the prosecutor to make burden shifting arguments. We may review that claim of error notwithstanding his noncompliance with ORAP 5.45 because we are able to discern that claim from defendant's opening brief.[2]

The state argues that defendant did not preserve his first two assignments of error. First, the state argues that "if defendant believed that the prosecutor's arguments *exceeded the permissible scope* of the trial court's anticipatory ruling, it was incumbent on defendant" to object. (Emphasis added.) Because defendant argues in his brief that the trial court's anticipatory ruling was erroneous, he was not required to again object when the prosecutor made arguments consistent with that ruling. *See, e.g.*, *State v. Pitt*, 352 Or 566, 573, 293 P3d 1002 (2012) ("[A] motion *in limine* is preferred because, if counsel must wait to make an objection and receive a ruling in front of the jury, the client could be prejudiced even though the ruling was in

---

[2] In the dissent's view, defendant does not challenge the trial court's preliminary ruling in this appeal, he only challenges the prosecutor's statements during the state's closing arguments, and defendant's challenges to the state's closing arguments were not preserved because defendant did not object. Although defendant argues that the prosecutor's arguments shifted the burden of proof, as noted in our opinion, defendant also argues that the trial court erred in its preliminary ruling at two points in his opening brief. Since that claim of error is "discernable" from defendant's briefing, we may review it despite defendant's failure to comply with ORAP 5.45(3). *Village at North Pointe Condo. Assn.*, 278 Or App at 360-61.

the client's favor." (Internal quotation marks and citation omitted.)). Second, the state argues that defendant did not identify any error in the court's ruling on his preliminary objection. But defendant argues that the trial court's ruling permitted the prosecutor to shift the burden of proof in closing arguments because the ruling was not "properly tailor[ed]." Thus, defendant identifies in his brief a ruling that is sufficient for our review—the trial court's ruling on his preliminary objection regarding burden shifting.

We acknowledge that some might consider this a close case, and reasonable minds may differ as to whether defendant preserved these claims. Therefore, we consider the policies underlying preservation and conclude that they are served in this case. *State v. Parkins*, 346 Or 333, 341, 211 P3d 262 (2009) ("Ultimately, the preservation rule is a practical one, and close calls \*\*\* inevitably will turn on whether, given the particular record of the case, the court concludes that the policies underlying the rule have been sufficiently served."). Our preservation policy (1) "gives a trial court the chance to consider and rule on a contention, thereby possibly avoiding an error altogether or correcting one already made, which in turn may obviate the need for an appeal"; (2) ensures fairness to an opposing party because it gives the party a chance to respond to the issue presented; and (3) "fosters full development of the record, which aids the trial court in making a decision and the appellate court in reviewing it." *Peeples v. Lambert*, 345 Or 209, 219-20, 191 P3d 637 (2008) (citations omitted). In considering whether an argument is preserved, our Supreme Court has cautioned that "problems \*\*\* may arise if the preservation onion is sliced too thinly." *State v. Amaya*, 336 Or 616, 629, 89 P3d 1163 (2004).

In this case, the policies underlying the preservation rule have been sufficiently served by defendant's anticipatory objection before the trial court. Defendant presented his concerns regarding possible burden shifting and alerted the trial court to his concerns such that the trial court had a chance to properly define arguments that constitute burden shifting; the state had a sufficient chance to respond to defendant's objection, as evidenced by prosecutor's discussion with the trial court as to how it intended to argue the

evidence; and defendant made a sufficient record regarding his concerns, particularly since he noted recent caselaw "was very specific that that is improper argument," and "[i]t's the state's burden."[3] Thus, defendant sufficiently preserved his claim of error by making a preliminary objection to the state shifting the burden of proof, and he was not required to object again, moments later, when the court articulated the boundaries for closing arguments. *See State v. Walker*, 350 Or 540, 549-50, 258 P3d 1228 (2011) (citation omitted) ("Once a court has ruled, a party is generally not obligated to renew his or her contentions in order to preserve them for the purposes of appeal.").

Turning to the merits, we must decide whether the trial court's ruling permitted the state to make arguments that shifted the burden of proof. "Generally, we review a trial court's ruling to limit argument for abuse of discretion. However, when the court's decision to limit argument is based on a legal determination, as it was in this case, we review the court's decision for legal error." *State v. Sanchez-Cacatzun*, 304 Or App 650, 660, 468 P3d 964 (2020), *rev den*, 367 Or 559 (2021) (citations omitted).[4]

"In arguing that the state has met its burden to prove all elements of a crime beyond a reasonable doubt, a prosecutor may attempt to persuade the jury that it should

---

[3] Although defendant did not specifically name the case, the trial court and the state had notice that recent case law provided the boundaries regarding burden shifting during closing arguments such that the state could "make an appropriate record in response" and the reference "enable[d] the court to avoid error." *See State v. Walker*, 350 Or 540, 549-50, 258 P3d 1228 (2011) ("The point *** is whether a party provides sufficient information to enable opposing parties to meet an objection and the trial court to avoid error.").

[4] Both the state and defendant contend that we review the trial court's ruling under an abuse of discretion standard, but the circumstances of this case require that we review the trial court's ruling for legal error. *See State v. Rogers*, 330 Or 282, 310-12, 4 P3d 1261 (2000) ("If there is only one legally correct outcome, 'discretion' is an inapplicable concept. It follows that we first must review evidentiary rulings without deference to determine whether proper principles of law were applied correctly."). In *State v. Chitwood*, the Supreme Court articulated the abuse of discretion standard of review when addressing plain error in the context of a trial court's failure to *sua sponte* grant a mistrial in the face of prosecutorial misconduct. 370 Or 305, 311-12, 518 P3d 903 (2022). Here, we review for legal error the trial court's ruling that articulated the permissible scope of the prosecutor's arguments. For that reason, we conclude that the abuse of discretion standard articulated in *Chitwood* does not apply.

believe one version of the events and not another." *Totland*, 296 Or App at 530-31 (citation and internal quotation marks omitted). "However, the prosecutor must not inappropriately characterize the jury's fact-finding function in a manner that raises some realistic possibility of confusing the jurors about the ultimate standard or burden of proof." *Id.* at 531 (citation and internal quotation marks omitted). We have "recognized two limited circumstances in which a prosecutor is permitted to comment on a defendant's failure to present or contradict evidence": (1) affirmative defenses (*e.g.*, an extreme emotional disturbance defense), and (2) defenses where, "as a practical matter, defendant bears the initial burden of production, but fails to present any evidence[,]" (*e.g.*, an alibi defense). *State v. Mayo*, 303 Or App 525, 531-32, 465 P3d 267 (2020) (citing *State v. Spieler*, 269 Or App 623, 640-42, 346 P3d 549 (2015)).

In *Mayo*, we clarified the circumstances in which a prosecutor can and cannot comment on a defendant's failure to present corroborating evidence. In that case, an officer found methamphetamine in the defendant's backpack during a traffic stop in which the defendant was a passenger in the car, and the state subsequently charged the defendant with possession of methamphetamine. *Id.* at 526-27. At trial, the defendant testified that he owned the backpack in the car, but that the methamphetamine was not his, and that he did not know there was methamphetamine in his backpack. *Id.* at 527. The defendant also testified that the car belonged to his friend, Gillenwater; that he forgot his backpack in the car a couple days before; that he called another friend, Claros, to recover his backpack and give him a ride home in Gillenwater's car; and that someone moved his backpack before he retrieved it from the car. *Id.* The defendant did not call either Gillenwater or Claros to testify at trial. *Id.* at 528.

During closing arguments, the defendant argued that he did not know that the methamphetamine was in his backpack and, therefore, he was not guilty. *Id.* During the state's rebuttal argument, the prosecutor argued that there was "no evidence that he actually did leave the backpack overnight. There [was] no evidence from his friend,

[Gillenwater], that, 'Yeah,' you know, 'I remember him using this.'" *Id.* at 529. Defendant objected, arguing that the state's arguments improperly shifted the state's burden, and the trial court overruled that objection. *Id.* The prosecutor subsequently argued, "We didn't hear from [Claros]. The only person who's telling you this story about this backpack being left overnight somewhere where things are planted is the defendant in this case." *Id.*

On appeal, we held that the trial court erred in overruling the defendant's objection, because the prosecutor's comments raised a "realistic possibility of confusing the jurors about the ultimate standard or burden of proof." *Id.* at 526 (quoting *Totland*, 296 Or App at 531). We reasoned:

> "The state cannot comment on a defendant's failure to adduce evidence to prove that the defendant did not have the requisite mental state necessary to establish criminal liability, because doing so could erroneously lead the jury to believe that the defendant carried the burden of introducing evidence to prove his or her innocence."

*Id.* at 537. Because we had previously recognized only two circumstances where the prosecutor may comment on the defendant's failure to produce evidence, we held that the prosecutor could not do so where the evidence related to the defendant's "lack of knowledge." *Id.* at 534. And, by arguing that the defendant lacked corroborating evidence as to what he knew about his backpack, the prosecutor suggested that the "defendant had the burden to prove *** that his version of events was true" in order to create reasonable doubt about his knowledge. *Id.* at 537.

This case is like *Mayo*. Here, the state had the burden to prove beyond a reasonable doubt that defendant knew that he had a felony conviction that precluded him from purchasing a firearm (Count 1), and he knew that the information he provided on the ATF form was false (Count 2). ORS 166.425(1); ORS 166.416(1). Similar to the defendant's arguments in *Mayo*, here, defendant's defense at trial centered on the state's failure to meet its burden to prove that he had the requisite knowledge. The trial court's ruling before closing arguments permitted the prosecutor to argue that defendant "could have," but did not, present certain

evidence "if he wanted to \*\*\* because he was asked about" that evidence. Thus, the trial court's ruling permitted the prosecutor to argue that defendant could have presented certain evidence even though defendant had no burden to do so. By permitting the state to make that argument—that defendant "could have" brought forward certain evidence to corroborate his lack of knowledge during his cross examination—the trial court allowed the state to impermissibly shift the burden, as evidenced by the prosecutor's subsequent closing arguments that complied with the trial court's anticipatory ruling.

The prosecutor's comments during closing argument asserted that defendant had failed to provide additional evidence to corroborate his testimony that he did not have knowledge of his felon status. The state argued that defendant "refuse[d]" to provide his attorney's name and that defendant "claim[ed] that the paperwork was lost in a fire or his dog ate it," or that the documents did not exist. The trial court's ruling permitted the prosecutor to make those arguments. By suggesting that defendant "could have" presented corroborating evidence by answering the prosecutor's questions on cross examination, the trial court allowed the state to "suggest[] [that] defendant had the burden" to produce that corroborating evidence "to prove that his version of events was true, to create a reasonable doubt about his knowledge" of his felon status.[5] *Mayo*, 303 Or App at 537.

In the dissent's view, this case is distinct from *Mayo* because defendant testified that he did not have corroborating evidence—*i.e.*, defendant did not provide his attorney's name or his paperwork when asked during cross examination. 326 Or App at 487-88 (Kamins, J., dissenting). We disagree with the dissent that that is a meaningful distinction in this case. When the trial court permits the state to argue that a defendant failed to present corroborating evidence

_____

[5] The dissent, correctly, notes that a proper analysis of the trial court's anticipatory ruling does not turn on the state's subsequent arguments because our review "is limited to the record as it had developed at the time of the ruling." *State v. Sperou*, 365 Or 121, 137, 442 P3d 581 (2019). Here, however, we note the state's arguments to illustrate the problem with the trial court's ruling and to demonstrate that the state's arguments conformed with the trial court's anticipatory ruling.

when he "could have" done so, those arguments shift the burden of proof to the defendant. If we allow such arguments, once a prosecutor asks a defendant about evidence that he "could have" brought to corroborate his testimony that he did not have the requisite mental state, the trial court must then permit a prosecutor to comment on a defendant's failure to bring that evidence by arguing that defendant "could have" done so. That argument impermissibly shifts the burden of proof because a defendant has no burden to offer evidence to prove that he did not have the requisite mental state.[6] *Mayo*, 303 Or App at 537.

Because "[t]he state cannot comment on a defendant's failure to adduce evidence to prove that the defendant did not have the requisite mental state necessary to establish criminal liability," the trial court's ruling before closing arguments permitted the prosecutor to "improperly shift[] the burden to defendant by inviting the jury to convict defendant for failing to call witnesses [or present documents] to create a reasonable doubt about his knowledge of" his felon status. *Id*. Therefore, we conclude that the trial court erred in ruling that those arguments were permissible.

Under Article VII (Amended), section 3, of the Oregon Constitution, we must affirm despite error if there is "little likelihood that the particular error affected the verdict[.]" *State v. Davis*, 336 Or 19, 32, 77 P3d 1111 (2003). Defendant argues that the trial court's ruling, and the state's arguments, likely affected the verdict on all counts, because the arguments "were targeted at undermining a core pillar of the defense," and the arguments also "cast defendant as a liar specifically for failing to prove something he had no burden to prove." The state has not provided any argument relating to harmless error.

---

[6] We appreciate the dissent's position that preventing the prosecutor from commenting on defendant's responses on cross-examination "hinders the adversarial process." 326 Or App at 488 (Kamins, J., dissenting). In *Mayo*, however, we also recognized that concern, and we noted that we have "recognized *two limited circumstances* in which a prosecutor is permitted to comment on a defendant's failure to present or contradict evidence." 303 Or App at 531 (citation and internal quotation marks omitted; emphasis added). As in *Mayo*, this case does not fall into one of those two circumstances, and we specifically held in *Mayo* that the state cannot comment on defendant's failure to present corroborating evidence relating to the knowledge element. *Id*. at 537.

In *Mayo*, we concluded that the trial court's error in overruling the defendant's objection to the prosecutor's burden shifting arguments was not harmless. 303 Or App at 538-40. We noted that the standard instructions provided to the jury did not cure the error: "[G]eneric instructions, while clarifying that the state bore the ultimate burden of proof, failed to specifically inform the jury that [the] defendant need not present witnesses to corroborate his testimony to create a reasonable doubt as to whether he had knowledge of the drugs in this backpack." *Id.* at 538. Additionally, the state's arguments pertained to a noncollateral matter—the defendant's credibility—in a case where the defendant never admitted he knew about the methamphetamine and "credibility was key to determining that issue ***." *Id.* at 539. Lastly, the prejudicial impact of the state's arguments was "compounded when, after [the] defendant objected to the prosecutor's comment on his failure to call Gillenwater, the prosecutor went on to comment on defendant's failure to call Claros[,]" which "invited the jury to speculate that [the] defendant did not call Gillenwater or Claros to corroborate his version of events because their testimony would be unfavorable to [the] defendant." *Id.* at 539.

Here, we conclude that the trial court's error was not harmless. As an initial matter, we note that the court's instructions at the beginning and the end of the case discussed the burden of proof generally, but like in *Mayo*, they did not clarify that defendant did not need to corroborate his testimony to create reasonable doubt as to whether he knew he was a felon. Additionally, the trial court permitted arguments that "did not pertain to an incidental or a collateral matter." *Id.* The core of defendant's defense was that he did not know that he was a felon. The trial court permitted the prosecutor to argue that defendant "could have" named his attorney "if he wanted to." When the prosecutor subsequently argued, as permitted by the trial court, that defendant "refused" to name his attorney and that the expungement documents did not exist because defendant did not have them, the state "improperly undercut defendant's credibility in a case in which credibility was key[.]" *Id.* Therefore, the improper arguments were harmful to the main theory of defendant's case and, in our view, had some

likelihood of affecting the jury's verdict on all of the counts. Given the totality of the circumstances, we conclude that the trial court's error in permitting the prosecutor's improper argument was not harmless.

In summary, we conclude that the trial court erred in its ruling on defendant's anticipatory objection to burden shifting during the state's closing arguments, because its ruling permitted the state to make arguments that shifted the burden of proof to defendant. In addition, the trial court's error was not harmless.

Reversed and remanded.

**KAMINS, J.,** dissenting.

The problem defendant identifies on appeal is that the prosecutor's closing argument—to which defendant did not object below—may have strayed into improper burden-shifting. However, the majority opinion describes that problem not as defendant does, but rather as a challenge to the trial court's anticipatory ruling delineating the proper scope of closing, a ruling that occurred before the prosecutor made any argument at all. The difficulties with that approach are twofold: defendant himself requested that ruling and it was correct—the trial court granted defendant's request to allow the prosecutor to comment only on defendant's testimony, *not* to engage in burden-shifting. Because I believe that defendant does not actually challenge that (correct) ruling that he himself invited and did not preserve the challenge to the prosecutor's closing argument that he *is* making, I respectfully dissent.

At trial, defendant testified to support the defense theory that he thought his prior convictions were expunged, enabling him to obtain a firearm. He testified that he and his attorney "did the paperwork * * * to apply for a gun." Defense counsel asked, "What was the advice you were given, ultimately, from an attorney?" and defendant responded: "To get the expungements, that was the attorney's job." On cross-examination, the prosecutor asked defendant for the name of the attorney who helped him with the expungement. Defendant initially responded that the attorney's name was "irrelevant." The trial court indicated that it was

relevant "unless [defendant] wants to invoke some kind of right," at which point his attorney stated, "he does have the right to attorney-client privilege." Defendant then testified, "I'll stick with attorney-client privilege." The prosecutor later asked if defendant had a copy of the paperwork and he testified: "Actually, my house caught on fire, so I lost everything I own, so, no."

Before closing, defendant made "a preemptive kind of objection" to ensure that the prosecutor did not argue that defendant bore the burden to produce evidence to support his claim of expungement. The court agreed with defendant's request and responded, "Oh, yeah. They can't burden shift." The court clarified, however, that the prosecutor "can comment on things your client did state, though" and defense counsel responded "*Correct.*"

The court asked if defendant would provide an example of what would be objectionable. Defendant responded that it would be a problem if the prosecutor argued "that we should have brought in the attorney to testify as to what occurred, we should have brought in maybe the expungement paperwork as evidence." The court responded "Oh, right. Right. And he can't do that." Defendant once again agreed with the court, repeating "He can't do that." The court clarified that the prosecutor was limited to discussing "what happened on the stand," including the fact that defendant was asked on cross-examination to provide his attorney's name and he declined. The court once again emphasized that the prosecutor could not cross the "fine line" into burden-shifting. At the end of that explanation *sustaining* defendant's objection, the court asked, "Anything else for the defense?" and defense counsel responded, "No." During closing argument, defendant did not object or otherwise alert the court to any concerns with whether the prosecutor complied with that ruling.

On appeal, defendant does not challenge the court's anticipatory ruling, which makes sense both because he invited that ruling and because it was correct. His assignments of error state that the "trial court erred by allowing the prosecutor to shift the burden of proof in closing argument," which, as the majority recognizes, do not identify the

"ruling" being challenged. ORAP 5.45(3).[1] In elucidating those assignments, defendant's brief focuses almost entirely on the content of the prosecutor's closing argument, not the trial court's anticipatory ruling. Specifically, defendant contends that "[t]he prosecutor impermissibly commented on defendant's failure to adduce evidence on a matter on which the state bore the burden of proof" and laments the fact that the trial court failed "to take *any* remedial action in the face of the prosecutor's improper argument." (Emphasis in original.)

Nevertheless, the majority concludes that defendant is actually challenging the trial court's anticipatory ruling about closing argument—the ruling that defendant himself asked for, received, and appeared to agree with. The majority identifies two sentences of defendant's brief in support of its interpretation: one in the preservation section that "defendant was not required to renew his objections when the prosecutor later made arguments the trial court ruled would be permissible," and the other at the end of the argument about whether any error was harmless, that the trial court failed to "properly tailor" its anticipatory ruling. 326 Or App at 475. Defendant's arguments on the merits only address the prosecutor's comments, not the trial court's anticipatory ruling, and nowhere does defendant identify which particular aspects of the lengthy anticipatory ruling he now considers to be objectionable.

The distinction is important because it dictates the scope of our review. If the challenged ruling is an anticipatory one, our review "is limited to the record as it had developed at the time of the ruling[,]" without considering what happened later. *State v. Sperou*, 365 Or 121, 137, 442 P3d 581 (2019); *see also State v. Pitt*, 352 Or 566, 574-75, 293 P3d 1002 (2012) (noting that the "defendant's reliance on the trial court's pretrial ruling for his assignment of error does affect the scope of the record that an appellate court may consider"). In other words, a proper analysis of the trial court's anticipatory ruling, contrary to the approach taken

_____

[1] It appears that, in light of *State v. Chitwood*, 370 Or 305, 312-13, 518 P3d 903 (2022), a defendant may assign error to a prosecutor's closing argument regardless of ORAP 5.45(3), although defendant does not make such an argument.

by the majority opinion, would not consider the prosecutor's subsequent argument, except to determine whether any error was harmless.

Determining which ruling we are reviewing is also important in determining whether the principles of preservation are served. Here, defendant asked the trial court to delineate the proper scope of argument and worked with the trial court to draw those lines. Defendant now appears to contend not that those lines were wrong, but that the prosecutor failed to color within them. If that was the case, defendant needed to say so in the moment, so that the trial court could ensure compliance with its own ruling. Had he done so, at a minimum, the trial court could have given a curative instruction reminding the jury of the correct burden of proof. *See State v. Clemente-Perez*, 357 Or 745, 752, 359 P3d 232 (2015) (noting that one of the primary purposes of the preservation rule is to allow the trial court to consider a contention and correct any error immediately). Instead, defendant expressed no dissatisfaction with the trial court's anticipatory ruling—indeed, he verbally *agreed* with it—nor with the prosecutor's apparent interpretation of that ruling. Although it is true that "parties are not required to repeat their objections after the trial court has ruled against them[,]" here, the trial court *sustained* defendant's objection and was not alerted to any concern that the way it did so was legally erroneous or that the prosecutor's subsequent arguments crossed the line. *Charles v. Palomo*, 347 Or 695, 701-02, 227 P3d 737 (2010); *see also State v. Walker*, 350 Or 540, 550, 258 P3d 1228 (2011) (concluding that the defendant's failure to reiterate her argument was not dispositive where the trial court *rejected* it); *State v. Clarke*, 300 Or App 74, 79, 451 P3d 1022 (2019) (concluding that the defendant's argument was unpreserved where he "affirmatively indicated to the trial court" that the state's objection was correct).

Turning to the merits of the anticipatory ruling that defendant does not challenge but the majority reverses, I believe that the trial court got it right.[2] The court properly

_____

[2] I also disagree with the majority that the standard of review is legal error, not abuse of discretion. 326 Or App at 477. *See State v. Mayo*, 303 Or App 525, 530, 465 P3d 267 (2020) (reviewing for abuse of discretion).

ruled that the prosecutor could not comment on evidence that defendant should have produced, but could comment on the evidence that defendant did present—including his own testimony. Just as a prosecutor cannot comment on a defendant's silence, a prosecutor cannot incorrectly imply that a defendant bears the burden of proof or production. However, a prosecutor may comment on anything the defendant *does* decide to say, such that, when a defendant decides to testify in their own defense, the prosecutor may comment on that testimony. *Cf. State v. Jay*, 273 Or App 373, 379, 359 P3d 417 (2015) (drawing a distinction between cases where the prosecutor's comments regarded the defendant's "silence" and those where they regarded "what a defendant 'said'"). Here defendant testified in his own defense and responded to the prosecutor's inquiries seeking clarification about his testimony. Defendant does not now argue that those questions were improper. Because defendant put that evidence into the record, the prosecutor was allowed to comment on those answers in closing.

The majority takes issue with one part of the anticipatory ruling, which allowed the prosecutor to argue that defendant "could have" presented certain evidence about which he was asked on cross-examination. 326 Or App at 479-80. However, in context, that statement did not authorize burden-shifting. In context, and specifically after the trial court spelled out that any argument suggesting that defendant "could have" provided evidence was out of bounds, the reference to evidence that defendant "could have" produced was simply a reference to defendant's own testimony: the trial court allowed the prosecutor to remind the jury that when asked to identify his attorney, defendant declined. 326 Or App at 479-80 ("But the prosecutor could say things like, 'hey, the defendant was testifying, and he didn't say the attorney's name, and he didn't have to, but he could have if he wanted to, you know, *because he was asked about that.*'") (Brackets omitted; emphasis added.)).

Because the trial court's ruling authorized only a comment on defendant's testimony and not any burden-shifting, the majority's reliance on *State v. Mayo* is misplaced. There, the prosecutor argued that the defendant did not produce any evidence to corroborate his testimony about

how methamphetamine ended up in his backpack, an argument that we concluded improperly shifted the burden. 303 Or App 525, 537, 465 P3d 267 (2020). Nothing in that case was about commenting on a defendant's testimony regarding the evidence in the record. In contrast, as the trial court correctly ruled, defendant here did testify as to the precise matter at issue, so the prosecutor was allowed to comment on that testimony. In other words, because the questions were permissible, it must also be permissible for the prosecutor to comment on defendant's responses to them—a situation that *Mayo* did not address.

That distinction is meaningful because it gets to the heart of the issue—whether the argument "raises some realistic possibility of confusing the jurors about the ultimate standard or burden of proof." *Id.* at 531. In *Mayo*, the prosecutor argued that there was "no evidence" that the defendant's testimony was true and that "the only person who's telling you this story" was the defendant. *Id.* at 529. Such comments cross the line into burden-shifting because they may lead the jury to believe that a defendant's testimony alone is insufficient to negate the state's theory. By contrast, when, as here, a prosecutor draws the jury's attention to specific portions of the defendant's testimony to argue that it is implausible, it is not likely that the jury will consequently fail to follow the instructions about the ultimate burden to proof. *See State v. Williams*, 276 Or App 688, 695, 368 P3d 459, *rev den*, 360 Or 423 (2016) ("We presume that jurors follow their instructions, 'absent an overwhelming probability that they would have been unable to do so.'" (Citing *State v. Smith*, 310 Or 1, 26, 791 P2d 836 (1990).)).

A contrary result hinders the adversarial process. Attorneys are allowed to comment on admissible evidence—that is, in fact, much of their job. If a defendant puts evidence into the record, through their testimony or otherwise, the prosecutor must be able to tell the factfinder how that evidence comports with other admissible evidence or the state's theory of the case. *See Cler v. Providence Health System-Oregon,* 349 Or 481, 487-88, 245 P3d 642 (2010) ("In general, in presenting closing arguments to the jury, counsel have a large degree of freedom to comment on the evidence submitted and urge the jury to draw any and all legitimate

inferences from that evidence." (Internal quotation marks and citation omitted.)); *State v. Purrier*, 265 Or App 618, 620-21, 336 P3d 574 (2014) ("[T]he state permissibly may attempt to persuade the jury that it should believe one version of events and not another.").

In my view, defendant did not preserve a challenge to the prosecutor's argument itself and does not assign error to the trial court's ruling delineating the limits of that argument, and, in any event, that ruling was correct. Accordingly, I would affirm the convictions.[3]

---

[3] I would also reject defendant's third assignment of error because the error—if any—was harmless.