148 May 28, 2026 No. 469

*This is a nonprecedential memorandum opinion pursuant to ORAP 10.30 and may not be cited except as provided in ORAP 10.30(1).*

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

TRAVIS ROBERT WATERSTON,
*Defendant-Appellant.*

Coos County Circuit Court
22CR27831; A181623

Martin E. Stone, Judge.

Argued and submitted April 11, 2025.

Mark J. Kimbrell argued the cause and filed the briefs for appellant.

Michael A. Casper, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Shorr, Presiding Judge, Powers, Judge, and DeVore, Senior Judge.

POWERS, J.

Affirmed.

**POWERS, J.**

In this criminal case, defendant appeals from a judgment of conviction for second-degree attempted murder (Count 1) and second-degree assault constituting domestic violence (Count 2). In his first through fourth assignments of error, he argues that the trial court erred in denying his motions for judgment of acquittal on each count. In his fifth assignment of error, defendant asserts that the court erred in overruling his objections to the prosecutor's references to facts outside the record. In his sixth assignment, he contends that the court plainly erred in permitting the prosecutor to make arguments that denied defendant a fair trial. Finally, in his seventh and eighth assignments, he argues that his sentences for his convictions on Counts 1 and 2 were unconstitutionally disproportionate under Article I, section 16, of the Oregon Constitution and the Eighth Amendment to the United States Constitution. For the following reasons, we affirm.

Although the parties are familiar with the factual and procedural history, we set forth a brief recitation of the undisputed background details for context in this nonprecedential memorandum opinion. Suffice it to say that while defendant was visiting his brother, M, in Oregon, the two of them were drinking one evening, and defendant became very intoxicated. At one point, M was outside preparing food, and as M walked back into the house, defendant walked quickly to the counter and grabbed a butcher knife. M testified that defendant said, "it's time to die" and "came at me with the knife." During the altercation, defendant asked, "who are you," and M repeated, "it's your brother." Defendant slashed M with the knife and attempted to stab him three times, and M sustained multiple cuts. Eventually, M was able to subdue defendant, and a neighbor called the police. Immediately following the incident, defendant did not remember what had happened. Defendant was then charged with second-degree attempted murder, second-degree assault constituting domestic violence, unlawful use of a weapon, and menacing constituting domestic violence. The primary issue at trial was whether defendant's voluntary intoxication caused him to be incapable of forming the requisite mental state for

each crime. On that point, the jury was instructed that the "voluntary use of alcohol or drugs does not excuse or justify criminal conduct. However, you may consider evidence of voluntary intoxication in making your decision whether the Defendant had the mental state that is required for the commission of the charged offenses." Ultimately, the jury found him guilty on Counts 1 and 2, as well as menacing, which merged with Count 1, and unlawful use of a weapon, which merged with Count 2. This timely appeal follows.

*Motions for judgment of acquittal.* In defendant's first through fourth assignments of error, he contends that the trial court erred in denying his motions for judgment of acquittal on all four counts. Defendant's assignments each ultimately distill down to an argument that, because defendant was so intoxicated such that he was in a "blackout" state, he could not form the requisite mental state for each crime. Defendant further contends that, as to the attempted murder charge, there was insufficient evidence that defendant intentionally attempted to kill M, specifically, because "defendant did not realize that he was attacking [M], let alone intend[ing] to take [M's] life." We review the denial of a motion for judgment of acquittal by examining the evidence in the light most favorable to the state to determine whether a rational trier of fact, accepting reasonable inferences and reasonable credibility choices, could have found the essential elements of the crime beyond a reasonable doubt. *State v. Cunningham*, 320 Or 47, 63, 880 P2d 431 (1994), *cert den*, 514 US 1005 (1995).

We have reviewed the record and conclude that, viewing the evidence under our standard of review, there was sufficient evidence for the jury to have found that defendant formed the requisite mental state for each crime. That is, specifically that defendant unlawfully and intentionally attempted to cause the death of M, that he unlawfully and knowingly caused physical injury to M by means of a dangerous weapon, that he unlawfully attempted to carry or possess a dangerous weapon with intent to use unlawfully against M, and that he unlawfully and intentionally attempted to place M in fear of serious physical injury. Here, there was sufficient evidence for the jury to have inferred

based on defendant's conduct that, despite his intoxication, he had the requisite mental states. *See O'Hara v. Premo*, 291 Or App 419, 424, 421 P3d 410, *rev den*, 363 Or 390 (2018) (observing that "the jury must almost always rely on inferences to determine a defendant's mental state").

Specifically, the evidence that defendant said, "it's time to die" and repeatedly slashed and attempted to stab M with the knife was sufficient for a jury to infer that he had the knowledge and intent to harm M and place M in fear of serious physical injury. Further, although the parties offered evidence from expert witnesses that had conflicting opinions about whether people in a "blackout" state can intend their conduct, the jury was permitted to believe the state's witness that testified that people who are in a "blackout" state can still communicate and make decisions. Finally, although there was evidence that defendant asked "who are you" before the attack, the jury was not required to credit that evidence, and given the entire circumstances before the incident and the evidence that M repeated to defendant "it's your brother," there is sufficient evidence for a jury to find that defendant intentionally attempted to cause M's death, specifically. Therefore, the trial court did not err in denying defendant's motions for judgment of acquittal.

*Preserved challenges to prosecutor's closing argument.* In defendant's fifth assignment of error, he challenges statements made by the prosecutor in closing argument. Defendant objected to those statements, and thus we review the trial court's decision to overrule an objection to closing arguments for abuse of discretion. *State v. Totland*, 296 Or App 527, 531, 438 P3d 399, *rev den*, 365 Or 502 (2019). In so doing, we determine whether the court's decision to overrule the objection was within the range of permissible options available to the court. *State v. Morehead*, 307 Or App 442, 448, 477 P3d 462 (2020). When a trial court allows a party to make a closing argument based on facts not in evidence, that decision can be said to "flow from a mistaken legal premise—*i.e.*, that such an argument can sometimes be permissible. It follows that a trial court generally abuses its discretion when it overrules a founded objection to a closing argument that refers to facts not in evidence." *Id.* at 449.

Defendant objected to two parts of the state's closing argument. We discuss them together. During rebuttal, the prosecutor argued, in part:

"[PROSECUTOR]:   Our thoughts and our actions work together. We don't just do things without thought behind them. If the Defendant wasn't making decisions about his actions who was? Who was controlling him? The alcohol? There's no, there's no evidence of that. There's no evidence that alcohol makes you do things. There's no evidence that alcohol takes over your body and puts you in a position to do things that you have no control over.

"That's imaginary doubt. That's as an imaginary doubt as saying that aliens came down and controlled him and told him what to do. He was acting like a different person. I don't know how many people are, know about domestic violence relationships but how many times does a domestic violence victim say I don't know what happened. When he drinks he's just not himself. That's the alcohol talking. I don't know where that even comes from. I thought, I would have thought he would never do this to me. The alcohol's taken over.

"That is why we have the instruction that the voluntary use, abuse, or anything of intoxicate, of alcohol is not an excuse or justify criminal contact, conduct. It's confusing the facts. It's confusing the issues to say that the State has to disprove that he was in a blackout state. We've been clicking at crimes in that state all the time. They are held accountable for their action—

"[DEFENSE   COUNSEL]: Objection, Your Honor. Facts outside the record.

"THE COURT:   It's argument. Overruled. Go ahead, counsel.

"[PROSECUTOR]:   And we hold those people accountable because they chose to drink alcohol. They chose to get drunk to the point of beyond inebriation to make bad decisions and engage in risky behavior. So we do look at the person's actions. Another misrepresentation of what I'm trying to say.

"We don't ever know exactly what's going on in a person's head. We don't know what goes on in someone's head when they murder someone, when they assault someone, when

they rape someone, when they abuse a child. Sometimes we can't even understand it and wrap our heads around. But what we do know is we look at the person's actions to prove that because we know that actions are controlled by thoughts. We know that actions don't just come out of a vacuum.

"He wasn't under anyone's control. He wasn't at the mercy of someone else who was moving the strings. He's acting of his own volition. He's making choices. They're poor choices. They're horrific choices. But they're his choices in his drunken state. Choices that he would not have made if he had been sober but that is not the standard.

"Voluntary use of intoxication is not an excuse. And you can use it to consider, among all the other evidence. There might scenarios where that would make a little bit more sense. Maybe take the guy that's up the river. He's been drinking. He's an alcoholic. He drinks all the time. And he is in a super inebriated state and he's armed with a gun. He always carries a loaded revolver with him.

"And he gets into what's kind of jawing with some teenagers and they're shouting at him. He's yelling back at them and he pulls that gun out. And he's waving it around and saying you can't talk to me like that. You can't blah, blah, blah not making any sense. And while he's gesturing with that gun wildly that gun goes off and it hits a kid.

"[DEFENSE COUNSEL]: Your Honor, objection. These are facts totally outside this record.

"THE COURT:   Overruled. It's, it's argument. Ladies and gentlemen, this is argument. Go ahead, counsel."

On appeal, defendant contends that in the first part he objected to, the prosecutor was referring to other domestic violence cases and crimes where the defendants were held "accountable." In the second part, defendant argues that the prosecutor referenced another hypothetical with no grounding in the record to contrast an innocent person with defendant. According to defendant, referencing those facts outside the record encouraged the jury to consider what happened in other cases when making a decision in this case. The state remonstrates that the prosecutor was attempting to explain the rule that voluntary intoxication does not excuse or justify criminal conduct by remarking on how

people commonly excuse behavior by speaking as though the alcohol, and not the person, was to blame. The state maintains that both arguments were helpful ways to illustrate the rule to the jury rather than suggesting evidence outside the record. We agree with the state's argument.

In our view, given the context of the entire argument, the prosecutor was arguing about the voluntary intoxication instruction, which was the crux of this case, and the argument was grounded in the evidence adduced at trial. When considering the context, the prosecutor was not referencing specific cases where the District Attorney's office had held a particular defendant accountable or where a particular drunk man on the river shot a teenager; rather, the prosecutor was providing examples to support the state's argument as to why defendant could still form the requisite intent although he was intoxicated. Therefore, we conclude that the statements were not references to facts outside of evidence, and the trial court did not err in determining that the statements were "arguments" rather than facts and thus did not abuse its discretion in overruling the objections.

Finally, even if the prosecutor's arguments were understood to contain facts not in evidence instead of hypothetical examples, the trial court's rulings—which included reminding the jury that the prosecutor's statements are "argument" and not evidence—sufficiently addressed any potential prejudice.

*Unpreserved challenges to prosecutor's closing argument.* In defendant's sixth assignment of error, he asserts that the trial court plainly erred in permitting the prosecutor to make arguments that denied defendant a fair trial. *See generally State v. Wyatt*, 331 Or 335, 341, 15 P3d 22 (2000) (explaining that the general rule is that "an issue not preserved in the trial court will not be considered on appeal"); ORAP 5.45(1) (allowing discretionary review of "plain" errors). For a claimed error to be "plain," the error must be one of law, obvious and not reasonably in dispute, and apparent on the record. *State v. Vanornum*, 354 Or 614, 629, 317 P3d 889 (2013). If those requirements are satisfied, the second step is to decide whether to exercise our discretion to consider and correct the error. *Ailes v. Portland Meadows,*

*Inc.*, 312 Or 376, 382, 823 P2d 956 (1991). Because defendant challenges statements made by a prosecutor during closing arguments, we must determine whether it is beyond reasonable dispute "that the prosecutor's comments were so prejudicial as to have denied defendant a fair trial." *State v. Chitwood*, 370 Or 305, 312, 518 P3d 903 (2022) (internal quotation marks omitted).

Defendant makes three primary challenges to the prosecutor's closing argument: that the prosecutor's arguments varied from the indictment, that the prosecutor conflated the requisite mental states, and that the prosecutor urged the jury to convict defendant to hold him "accountable." We begin with the first primary challenge and conclude that the challenged argument was not an obvious legal error. We then analyze the second and third challenges together and conclude that the trial court did not plainly err in failing to *sua sponte* declare a mistrial.

First, defendant contends that the prosecutor's arguments varied from the indictment and thus impermissibly lowered the state's burden of proof by asserting that the "identity of the person you are trying to kill is not something that you have to prove." The difficulty with defendant's plain-error argument, however, is that the Oregon Supreme Court previously concluded that the state is not required to prove that a defendant intended to take the life of a particular person; rather, the state must prove only that the defendant intended to cause the death of "another human being." *State v. Turnidge (S059155)*, 359 Or 364, 461, 374 P3d 853 (2016), *cert den*, 580 US 1070 (2017). Thus, because the challenged argument was not an obvious misstatement of the law, defendant has not met the requirements for plain error.

Second, defendant argues that the prosecutor asserted the incorrect mental state by arguing that defendant was "conscious" and "acting of his own volition," which, according to defendant, suggested to the jury that a voluntary act alone was enough to establish criminal liability and thus absolved the state of its burden to prove that defendant acted intentionally or knowingly. Moreover, defendant contends that the prosecutor's statements that defense

attorneys "often" attempt to "discredit victims" and "confuse the issues with the facts" suggested that defense counsel was purposefully muddying the mental states that the state had to establish. The state remonstrates that the prosecutor was not conflating the mental states or personally attacking defense counsel; rather, the prosecutor was responding to defendant's theory of the case—*viz.*, that even if defendant's behavior was outwardly intentional and deliberate, he was in fact "unconscious" because he was in a "blackout" state. According to the state, to the extent that the prosecutor focused on the idea that defendant was "conscious," it was not to suggest that that was all the state needed to prove but rather to rebut the claim from defendant's expert that defendant was unconscious and unable to make intentional or knowing decisions.

Finally, defendant contends that the prosecutor's statements—including that "[o]ur actions suggest intent. We're responsible for the choices we make, as it should be"; that "we hold those people accountable because they chose to drink alcohol"; and that defendant's intoxication is "not an excuse but he wants you to think that it is. That he shouldn't be held accountable"—were improper because they encouraged the jury to decide the case on an improper basis. In defendant's view, the state impermissibly argued that intoxication would not allow defendant to avoid criminal liability, regardless of his mental state. The state asserts that the prosecutor was commenting on the central issue in this case—the voluntary intoxication rule—and simply encouraging the jury to apply the rule and not to allow defendant's voluntary consumption to excuse his criminal conduct.

After reviewing the record, including closing arguments, we conclude that both parties present plausible interpretations of the prosecutor's arguments. Given that conclusion, defendant's contentions fail to meet the requirements for plain-error review because any legal error is reasonably in dispute. *See State v. Farmer*, 317 Or 220, 224, 856 P2d 623 (1993) (explaining that an "open issue" is not an "obvious" error if it is "reasonably open to dispute"); *State v. Gallegos*, 302 Or App 145, 152, 460 P3d 529, *rev dismissed*, 366 Or 382 (2020) (explaining that the competing arguments offered by

the parties demonstrated that the alleged error was reasonably in dispute, which "has the effect of precluding plain-error review").

Moreover, even if the errors were plain, we would not exercise our discretion to correct them because properly timed objections would have allowed the trial court to correct them. Here, defendant made two objections during closing arguments that the trial court overruled with a curative instruction. That is, although the court overruled defendant's objections in both instances, the court also reminded the jury of the instruction that was given before closing arguments began that told the jury that the attorneys' statements are not evidence but rather "argument." There is nothing about those particular challenges that suggests a timely objection could not have addressed any legal error.

*Sentencing challenges.* In his seventh and eighth assignments of error, defendant contends that the sentences imposed on Counts 1 and 2 were constitutionally disproportionate under Article I, section 16, of the Oregon Constitution and the Eighth Amendment to the United States Constitution. The mandatory minimum sentences for those counts were 90 months in prison for attempted second-degree murder and 70 months in prison for second-degree assault. We review the proportionality of a sentence for legal error, and we are bound by the trial court's findings of historical fact if they are supported by evidence in the record. *State v. Conrad*, 280 Or App 325, 333-34, 381 P3d 880 (2016), *rev den*, 360 Or 851 (2017).

Article I, section 16, provides, in part, "Cruel and unusual punishments shall not be inflicted, but all penalties shall be proportioned to the offense." A sentence violates Article I, section 16, only if it is so disproportionate to the offense as to "shock the moral sense" of reasonable people. *State v. Rodriguez/Buck*, 347 Or 46, 57-58, 217 P3d 659 (2009). Because the role of courts is not to "second-guess" the penalties enacted by the legislature, we will determine that a sentence is disproportionate only in rare circumstances. *Id.* at 58. When a court is evaluating the proportionality of a sentence applied in a specific case, the court considers at least three factors: "(1) a comparison of the severity of the

penalty and the gravity of the crime; (2) a comparison of the penalties imposed for other, related crimes; and (3) the criminal history of the defendant." *Id.*; s*ee also State v. Wiese*, 238 Or App 426, 429-30, 241 P3d 1210 (2010), *rev den*, 349 Or 654 (2011) (explaining that an analysis of the three factors under Article I, section 16, provides a sufficient basis to decide whether the defendant's sentence was disproportionate and cruel and unusual under the Eighth Amendment).

Here, we conclude that the sentences are not unconstitutionally disproportionate. Although defendant does not have a criminal history, his act of grabbing a knife and repeatedly stabbing M falls within the conduct those statutes intend to prohibit. Further, we are not persuaded by defendant's argument in his memorandum of additional authorities citing *State v. Gonzalez*, 373 Or 248, 564 P3d 109 (2025), that in these circumstances, defendant's voluntary intoxication reduces his culpability such that his sentences would "shock the moral sense" of reasonable people.

Affirmed.