368 January 8, 2025 No. 30

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

JEFFERY JERALD SKOTLAND,
*Defendant-Appellant.*

Washington County Circuit Court
19CR77935; A176291

On remand from the Oregon Supreme Court, *State v. Skotland*, 372 Or 319, 549 P3d 534 (2024).

Erik M. Bucher, Judge.

Submitted on remand June 27, 2024.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Stacy M. Du Clos, Deputy Public Defender, Office of Public Defense Services, filed the briefs for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Jordan R. Silk, Assistant Attorney General, filed the briefs for respondent.

Before Tookey, Presiding Judge, Egan, Judge, and Kamins, Judge.

KAMINS, J.

Affirmed.

**KAMINS, J.**

Defendant appeals from a judgment of conviction for various offenses connected to his purchase of a firearm. The case is on remand to us after the Supreme Court reversed our decision in *State v. Skotland*, 326 Or App 469, 533 P3d 55 (2023), *rev'd*, 372 Or 319, 549 P3d 534 (2024) (*Skotland I*). *Skotland I* addressed defendant's first and second assignments of error—whether the prosecutor's comments impermissibly shifted the burden of proof by commenting on defendant's refusal to provide his lawyer's name and legal documents—which the Supreme Court reversed, because those arguments were unpreserved. *State v. Skotland*, 372 Or 319, 549 P3d 534 (2024) (*Skotland II*). As the Supreme Court directed in *Skotland II*, our task on remand is to address whether defendant's first and second assignments of error "qualif[y] as plain error, and if not, to address" defendant's third assignment of error—whether the trial court erred by denying defendant's jury instruction on impossibility. *Id.* at 321. For the reasons discussed below, we affirm.

Defendant attempted to purchase a firearm from a sporting goods store despite having two prior felony convictions in the State of Washington.[1] At trial, defendant testified that he "assumed or was hoping" that he was eligible to purchase a gun, because three or four months prior to attempting to purchase one, he filled out expungement paperwork with his attorney. On cross-examination, defendant refused to identify his attorney, claiming that "[i]t's irrelevant" and then invoking attorney-client privilege after his defense counsel advised him of that option. He also testified that he did not have a copy of the expungement documents, because his house caught on fire and destroyed all of his possessions.

During closing argument, the prosecutor argued:

"He claimed that he filled out a bunch of paperwork in the state of Washington. We don't have that paperwork here today. He claims that the paperwork was lost in a fire, or his dog ate it, or we don't know. But perhaps it doesn't exist.

---

[1] *Skotland I* provides a comprehensive factual background. 326 Or App at 470-74.

"He also claims that an attorney, who he refused to name, told him that he could mark 'no' on the ATF form. And that's what he told officers when he was confronted.

"But, today, he said that attorney who he refuses to name told him that he needed to wait. So which is it? Was he told to wait, or *** was he told he was good to go ahead and write 'no'?

"We don't know who that attorney is or if that attorney exists because he refuses to tell us."

Defendant assigns two errors based on that closing argument, contending that the prosecutor shifted the burden of proof to defendant by commenting on defendant's refusal to provide his lawyer's name and defendant's failure to produce the expungement documents. Because the Supreme Court concluded that defendant did not preserve his arguments, *Skotland II*, 372 Or at 326-27, we consider whether defendant's arguments raise plain error. "For an error to be plain error, it must be an error of law, obvious and not reasonably in dispute, and apparent on the record without requiring the court to choose among competing inferences." *State v. Vanornum*, 354 Or 614, 629, 317 P3d 889 (2013). And "an unpreserved challenge to prosecutorial statements must demonstrate that the statements were so prejudicial that they deprived defendant of a fair trial"; that is, "if the defendant had made a motion for a mistrial, the trial court would have erred, as a matter of law, in denying it." *State v. Chitwood*, 370 Or 305, 312-314, 518 P3d 903 (2022).

As such, our "review begins with the question whether the prosecutor's statements were obviously improper or impermissible[.]" *State v. Montgomery*, 327 Or App 655, 657, 536 P3d 627 (2023), *rev den*, 371 Or 825 (2024).

The prosecutor's statements were not obviously improper such that they "allowed the jury to consider facts that had not been received into evidence, or otherwise encouraged the jury to decide the case on an improper basis." *Id.* at 658. Rather, the prosecutor's argument can be understood as questioning the credibility of defendant's testimony that he was unable to recall his attorney's name and that his expungement documents were destroyed in a

house fire. Within that context, it is not obvious that the prosecutor was suggesting that defendant needed to produce corroborating evidence rather than challenging defendant's credibility and arguing "how the jury should assess defendant's theory of the case *** in light of the evidence presented during trial." *State v. Brannan*, 332 Or App 36, 42, 549 P3d 19 (2024); *see also State v. Smith*, 334 Or App 89, 92, 554 P3d 817 (2024) (observing that "it is permissible for a prosecutor to argue that a defendant's evidence is unconvincing, and that the jury should not be persuaded by it" so long as that argument does not suggest that "a defendant was required to or had a burden to present corroborating evidence, evidence that contradicts the state's evidence, or, indeed, any evidence at all").

Defendant contends that *State v. Mayo*, 303 Or App 525, 465 P3d 267 (2020), requires reversal. There, the defendant testified that the drugs found in his backpack did not belong to him and may have belonged to two other individuals. *Id.* at 528. In closing, the prosecutor pointed to the defendant's failure to call those witnesses to corroborate his theory. *Id.* at 528-29. We held that that "argument improperly shifted the burden to [the] defendant by inviting the jury to convict [the] defendant for failing to call witnesses to create a reasonable doubt about his knowledge of the methamphetamine in his backpack." *Id.* at 537-38; *see also State v. Arena*, 336 Or App 291, 293-96, ___ P3d ___, (2024) (concluding that a prosecutor's argument that the defendant only elicited testimony from "*people with a strong relationship connection*" to the defendant and that the defendant did not call other roommates who may have been more impartial suggested that the defendant bore the burden to call additional witnesses "to support his theory of defense" (emphasis in original)).

However, as explained above, it is not obvious that the prosecutor here was suggesting that defendant must produce evidence to support his theory of defense rather than arguing that the jury should be unpersuaded by the evidence that defendant *did* put in the record—his own testimony. *See State v. Purrier*, 265 Or App 618, 622, 336 P3d 574 (2014) (concluding that "it is unlikely that the jury

would have understood the prosecutor's subsequent statements about the parties' competing 'stories' as anything other than advocacy about how the jury should assess the credibility of the witnesses"). Accordingly, the prosecutor's comments were not obviously improper. Any error, therefore, is not plain and does not qualify for plain error review.

In his final assignment of error, defendant contends that the trial court erred in denying defendant's proposed jury instruction on impossibility, which can be a defense for a defendant who believed that they were not committing a crime, on Count 3, attempted felon in possession of firearm charge. Below, defense counsel argued that defendant was entitled to that instruction, because "if the facts were as [defendant] believed them to be" (that defendant was "actually legally" trying to purchase the firearm because he was not a felon), "he wouldn't have been committing a crime." The trial court declined to provide that instruction, opining that if defendant "intended to buy a gun and the state can prove it beyond a reasonable doubt and he was a convicted felon, impossibility cannot be used as a defense."

On appeal, defendant challenges that ruling, raising the same argument as below. The state responds in the main that any error is harmless because, by returning a guilty verdict, "the jury necessarily found that defendant did know he was a felon." We agree that any error is harmless.

"We must affirm the judgment below if we determine that there was 'little likelihood that the error affected the verdict[.]'" *State v. Payne*, 366 Or 588, 609, 468 P3d 445 (2020) (quoting *State v. Davis* 336 Or 19, 33, 77 P3d 1111 (2003)). In addition to Count 3, defendant was also found guilty of unlawful purchase of a firearm, Count 1, and providing false information in connection with the transfer of a firearm, Count 2. In order to convict on those counts, the jury had to find that defendant "*knew* he was prohibited by state law from owning" a firearm and that defendant "*knowingly* provide[d] any false information in connection with a purchase or transfer of a firearm." (Emphases added.) Because the jury returned guilty verdicts on those counts—thereby discrediting defendant's assertion that he believed he could lawfully purchase a firearm—we are unpersuaded that an

impossibility instruction would have affected the outcome; the jury did indeed find that defendant knew he had a prior felony conviction and knew he was prohibited by state law from owning a firearm. Therefore, any error, on this record, would be harmless. *See State v. Kerne*, 289 Or App 345, 350, 410 P3d 369 (2017), *rev den*, 363 Or 119 (2018) (concluding that the trial court's jury instructional error as to the correct culpable mental state with regard to the element of forcible compulsion was harmless because the jury's guilty verdict "necessarily discredited defendant's assertion").

Affirmed.