314 March 5, 2025 No. 173

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

JEFFREY ALAN BUCK,
*Defendant-Appellant.*

Columbia County Circuit Court
22CR55135, 22CR28074, 19CR48405, 22CN03254;
A180528 (Control), A180588, A180529, A180530

Michael T. Clark, Judge.

Argued and submitted September 5, 2024.

Kyle Krohn, Deputy Public Defender, argued the cause for appellant. Also on the brief was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Robert M. Wilsey, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Aoyagi, Presiding Judge, Egan, Judge, and Joyce, Judge.

EGAN, J.

Reversed and remanded for resentencing in Case Number 19CR48405; otherwise affirmed.

**EGAN, J.**

In this consolidated appeal, defendant challenges a probation revocation judgment, two judgments of conviction, and a contempt judgment.[1] Defendant presents five assignments of error, arguing that (1) the trial court erred when it granted the state's motion to consolidate three of his cases; (2) the trial court abused its discretion when it admitted the name of defendant's prior felony convictions, which were offered for impeachment; (3) and (4) the prosecutor violated defendant's right to a fair trial by arguing, during rebuttal arguments, that the victim's statement to a nurse was true as a matter of law because it was made for medical diagnosis; and (5) the trial court erred when it imposed a sentence exceeding the statutory maximum. For the reasons that follow, we remand for resentencing based on defendant's fifth assignment of error, but we otherwise affirm.

## I.   BACKGROUND

We begin by briefly describing the facts that led to the charges at issue.  One night, defendant and his wife, A, were drinking at their home with A's brother. Eventually, A's brother went outside to sleep in his truck. Afterwards, defendant and A had consensual sex. A testified that she fell asleep, and she woke up to defendant attempting to take her pants off. A told defendant to stop and pushed him away, but defendant hit her in the head several times. Defendant continued hitting her, and A fought back. Eventually A "gave in," and defendant had "sexual intercourse" with A. After defendant finished, A ran outside to her brother. Her head was bruised and bloody. A's brother went into the house, and he fought defendant; during the fight, A said, "you beat me, you raped me, you hurt me." After this incident, A's aunt took her to the hospital, and a sexual assault nurse examiner

---

[1] This consolidated appeal involves judgments from four cases. First, in Case Number 22CR28074, a jury found defendant guilty of Rape in the First Degree, ORS 163.375 (Count 1); Sexual Abuse in the First Degree, ORS 163.427 (Counts 2 and 3); and the lesser-included offense of Assault in the Fourth Degree, ORS 163.160 (Count 7). The jury acquitted defendant of Assault in the Second Degree, ORS 163.175 (Count 7) and Strangulation, ORS 163.187 (Count 8). Second, in Case Number 22CR55135, defendant executed a conditional guilty plea to five counts of witness tampering, ORS 162.285. Third, in Case Number 22CN03254, defendant admitted five counts of contempt, ORS 33.065. Lastly, in Case Number 19CR48405, the trial court revoked defendant's probation based on these convictions.

(SANE nurse) evaluated A. A's aunt stayed with A during this examination, and she observed the bruises and marks on A's body. Based on this incident, the state charged defendant with rape, sexual abuse, assault, and strangulation.

After defendant was charged, he sent A over a dozen letters, urging her not to testify or to give exculpatory testimony. Based on those communications, the state charged defendant with five counts of witness tampering and contempt.

The state filed a motion to consolidate the charges stemming from defendant's rape case with the charges for witness tampering and contempt. Defendant objected to the consolidation. The trial court had a hearing on the matter, after which the court granted the state's motion to consolidate. Defendant pleaded guilty to the witness tampering and contempt charges on the condition that defendant reserved the right to appeal the trial court's order consolidating the cases.

A trial was held on the remaining charges. The state presented testimony from A, A's brother, the investigating officer, A's aunt, and the SANE nurse. Defendant testified in his own defense. The jury found defendant guilty of first-degree rape, first-degree sexual abuse (two counts), and fourth-degree assault. The jury acquitted defendant of second-degree assault and strangulation.

Defendant now appeals.

## II.   DISCUSSION

As previously noted, defendant presents five assignments of error. He argues that the trial court erred when it granted the state's motion to consolidate; the trial court erred when it admitted the names of defendant's prior felony convictions, which were offered for impeachment; the prosecutor presented arguments that deprived defendant of a fair trial;[2] and the trial court erred when it imposed a sentence exceeding the statutory maximum. We address each of those assignments in turn.

---

[2] Defendant combines his arguments for his third and fourth assignments of error, and we do the same.

A.   *Consolidation*

Defendant first argues that the trial court erred in consolidating defendant's multiple cases for trial, because the charging instruments did not allege a basis for joinder of the offenses pursuant to ORS 132.560.[3] Whether the trial court properly consolidated defendant's charging instruments is "a legal determination subject to review for errors of law." *State v. Dewhitt*, 276 Or App 373, 380, 368 P3d 27, *rev den*, 359 Or 667 (2016).

In the state's motion to consolidate, it argued that the charges were "part of a common plan and scheme by the defendant." At the hearing on the state's motion to consolidate, defendant agreed that the witness tampering case and the contempt case could be joined because the charging instruments showed they were of the same character. However, defendant argued that none of the charging instruments alleged facts or the statutory language necessary to join the rape case with the witness tampering and contempt cases. The state argued that it was not required to include the language for joinder in the indictment itself—specifically, that the charges were "all part of a common scheme or plan," ORS 132.560(1)(b)(C)—because the state had moved to consolidate multiple charging instruments pursuant to ORS 132.560(2) rather than charging those offenses in a single charging instrument pursuant to ORS 132.560(1)(b). The trial court agreed with the state, noting that A was alleged as the victim of the sexual crimes and

---

[3] ORS 132.560 provides:

"(1)  A charging instrument must charge but one offense, and in one form only, except that:

"(a)  Where the offense may be committed by the use of different means, the charging instrument may allege the means in the alternative.

"(b)  Two or more offenses may be charged in the same charging instrument in a separate count for each offense if the offenses charged are alleged to have been committed by the same person or persons and are:

"(A)  Of the same or similar character;

"(B)  Based on the same act or transaction; or

"(C)  Based on two or more acts or transactions connected together or constituting parts of a common scheme or plan.

"(2)  If two or more charging instruments are found in circumstances described in subsection (1)(b) of this section, the court may order them to be consolidated."

also the witness for the tampering charge. It concluded that that was "sufficient to allow that * * * joinder."

    1.  *Was the trial court limited to the face of the indictments?*

Defendant renews his arguments on appeal. According to defendant, at least one of the state's charging instruments had to include the language for joinder or facts sufficient to support joinder—*i.e.*, defendant argues that the trial court was limited to considering the three charging instruments in deciding whether to consolidate the cases, and it could not use the basis outlined in the state's motion for consolidation, which was not alleged in any of the charging instruments.

The state responds that the pleading requirements for joinder under ORS 132.560(1)(b) do not apply to consolidation of cases. In deciding whether to consolidate the three cases, it asserts that the trial court "was not limited to the 'four corners' of the indictments—as is the circumstance when a defendant demurs to an indictment under ORS 132.560(1)(b)." The state contends that the trial court could also rely on the state's motion to consolidate, which asserted that consolidation was permitted because the crimes in the charging instruments were part of a common plan and scheme by defendant.

We begin with the question of whether, when a prosecutor requests that two or more charging instruments be consolidated pursuant to ORS 132.560(2), at least one of those charging instruments must allege the basis for joining the charges or facts sufficient to support joinder. That is a question of statutory interpretation. In questions of statutory interpretation, we begin with the text and context of the statute. *See State v. Gaines*, 346 Or 160, 171, 206 P3d 1042 (2009) (the first step in interpreting a statute is "an examination of text and context"). "If the legislature's intent remains unclear after examining text, context, and legislative history, the court may resort to general maxims of statutory construction to aid in resolving the remaining uncertainty." *Id*. at 172.

ORS 132.560 governs the joinder, consolidation, and severance of criminal offenses. ORS 132.560(1) "creates

a general rule that a charging instrument must not charge more than one offense." *State v. Warren*, 364 Or 105, 113, 430 P3d 1036 (2018). However, the statute identifies three circumstances in which multiple offenses may be charged in a single charging instrument. ORS 132.560(1)(b) states:

> "Two or more offenses may be charged in the same charging instrument in a separate count for each offense if the offenses charged are alleged to have been committed by the same person or persons and are:
>
> "(A)   Of the same or similar character;
>
> "(B)   Based on the same act or transaction; or
>
> "(C)   Based on two or more acts or transactions connected together or constituting parts of a common scheme or plan."

The statute's second section permits trial courts to order the consolidation of two or more charging instruments. ORS 132.560(2). The section provides, in full, "If two or more charging instruments are found in circumstances described in subsection (1)(b) of this section, the court may order them to be consolidated." *Id*. Accordingly, when the state moves to consolidate, the trial court must "determine whether the charges meet any of the independently sufficient bases for joinder listed in ORS 132.560(1)(b)(A) to (C)." *Dewhitt*, 276 Or App at 380. If the charging instruments meet any those bases, then they may be consolidated. *Id*.

On its own, the text of ORS 132.560(2) is not clear regarding what a court may consider in deciding whether indictments "are found in" the relevant "circumstances." However, in *State v. Warren*, it appears that the Supreme Court resolved that uncertainty regarding what a court may consider in its inquiry. Although the issue before the court in *Warren* related to the joinder of offenses in a single indictment—not consolidation under ORS 132.560(2)— in the course of reaching their conclusions about joinder, both the majority and the concurrence agreed that, based on context, the text of ORS 132.560(2) allows a court to look beyond the face of the indictments in the course of deciding whether to allow consolidation. 364 Or at 126-27, 138-39.

The question before the court in *Warren* was whether ORS 132.560(1)(b) requires that a single indictment that charges more than one offense allege the basis for joinder of those offenses. *Id*. at 112. The majority held that, to properly join multiple charges in a single charging instrument pursuant to ORS 132.560(1)(b), the charging instrument must allege, on the face of the document, the basis for joinder or facts sufficient to allow joinder. *Id*. at 114.

In a concurring opinion, Justice Flynn disagreed that the charging instrument must allege the basis for joinder or facts sufficient to allow joinder. The concurrence concluded that the statutory context of ORS 132.560(1)—specifically, ORS 132.560(2)—indicates that the legislature intended "to permit joinder when offenses 'are' related in one of the ways permitted under ORS 132.560(1)(b), regardless of whether the indictment alleges that the joined offenses share one of those relationships." *Id*. at 139 (Flynn, J., concurring). According to the concurrence, ORS 132.560(2) "demonstrates a legislative intent" that the charges may be joined under circumstances outlined in ORS 132.560(1)(b)(A) to (C) even if a charging instrument does not allege the bases for joinder:

> "[ORS 132.560(2)] demonstrates a legislative intent that the circumstances sufficient to join multiple offenses will exist when no indictment alleges that the charged offenses are related to one another. It demonstrates that intent because there is no reason to expect a single-count indictment to allege that the charged offense is related to an offense charged in a different indictment, yet ORS 132.560(2) contains no suggestion that the state must add such an allegation to either indictment in order for the court to join the offenses for trial."

*Id*. (Flynn, J., concurring).

Although the majority disagreed with the concurrence that ORS 132.560(2) demonstrated the legislature's intention to allow joinder under ORS 132.560(1)(b) without an allegation within the charging instrument itself, the majority agreed with the concurrence that ORS 132.560(2) allows a court to look beyond the indictments in considering consolidation. In response to the concurrence's argument

that ORS 132.560(2) requires that courts look beyond the face of the indictments for consolidation purposes and that the statute shows that the legislature intended the same procedure for joinder, the majority emphasized that joinder and consolidation are different. The majority explained,

> "[T]he fact that a court can consolidate indictments is not inconsistent with the requirement that an indictment that charges more than one offense must allege the basis for joining the charges. *Requiring an indictment to allege the basis for joining offenses provides the same benefits as requiring court approval for the consolidation of indictments.* Both requirements serve to provide notice of the state's basis for joinder and to bind the state to that basis."

*Id*. at 127 (emphasis added).

Thus, we understand the court to have held in *Warren* that, in deciding whether to consolidate indictments under ORS 132.506(2), a court may look beyond the face of the charging instruments. Because that holding was not the main issue before the court in *Warren*—rather, it was merely a point of agreement between the majority and the concurrence on an issue collateral to the one directly in dispute—we briefly explain why, in our view, that point of agreement is consistent with the statutory context of ORS 132.506(2).

The history of ORS 132.560(1) and (2) shows that, although the substantive reasons for joining charges and consolidating indictments are the same, there is no indication that the basis for consolidation must be alleged in the indictment. Early Oregon law prohibited charging instruments from charging more than one offense under any circumstances. *Warren*, 364 Or at 115-16 (citing *Statutes of Oregon 1854, Act to Define Crimes and Misdemeanors, and Regulate Criminal Proceedings*, p 184, 231; General Laws of Oregon, Crim Code, ch VIII, § 74, p 454 (Deady 1845-1864)). Based on that rule, the law also prohibited consolidation of two or more indictments. *State v. Gilbert*, 55 Or 596, 598, 112 P 436 (1883) ("Our law will not even permit a defendant to be tried for more than one crime, and that charged in one form only, on the same indictment. Cr. Code, § 74. Much less, it would seem, would it tolerate his being tried at the same time upon two indictments, charging distinct crimes of a

capital nature, as appears by the record to have been done in this case.").[4]

In 1933, the legislature amended the joinder statute to allow for multiple charges to be joined in a single indictment or for two or more indictments to be consolidated, so long as the charges constituted "the same act or transaction." Or Laws 1933, ch 40, § 1. The statute provided:

"[W]hen there are several charges against any person, or persons, for the same act or transaction instead of having several indictments, the whole may be joined in one indictment in several counts; *and if two or more indictments are found in such cases, the court may order them to be consolidated.*"

OCLA § 26-711 (1940), *recodified at* ORS 132.560 (1953), *amended by* Or Laws 1989, ch 842, § 1, Or Laws 1993, ch 278, § 1 (emphasis added).

The legislature amended ORS 132.560 in 1989 by adding the three specific bases for permitting joinder—ORS 132.560(1)(b)(A) to (C). The 1989 amendment also "added an entirely separate provision" for consolidation, *viz.*, ORS 132.560(2). *Warren*, 364 Or at 139 n 1 (Flynn, J., concurring). That separate provision incorporated the substance of the new bases for permitting joinder, but its description of the court's task in consolidation—to consolidate when multiple indictments "are found in" situations where joinder is allowed—remained the same. *Compare* ORS 132.560(2) (1953) (permitting consolidation when two or more indictments "are *found in* \*\*\* cases*" in which "there are several charges against any person, or persons, for the same act or transaction" (emphasis added)), *with* ORS 132.560(2) (1989) (permitting courts to consolidate two or more indictments when they "*are found in circumstances described* in paragraph (b) of subsection (1)" (emphasis added)).[5] Thus, there

---

[4] The caselaw indicates that no statutory authority existed, prior to the 1933 amendments, for the consolidation of multiple charging instruments. *See State v. Moltzner*, 140 Or 128, 131, 13 P2d 347 (1932), *overruled by State v. Kuhnhausen*, 201 Or 478, 266 P2d 698 (1954) (discussing other authorities that "are not harmonious upon the question of whether, *in the absence of statutory authority*, two or more criminal cases may be consolidated" after discussing the joinder law that prohibits multiple charges in a single indictment (emphasis added)).

[5] The statute was amended in 1993 to replace the term "indictment" with the term "charging instrument," which appears in the current version of the statute. Or Laws 1993, ch 278, § 1.

is no indication that the 1933 consolidation provision or the 1989 amendments limited courts to the face of the indictments in considering motions to consolidate. Instead, the question has always been whether the indictments "are found in" circumstances that allow joinder.

The understanding that ORS 132.560(2) does not require that the indictments allege the basis for consolidation is also consistent with the *Warren* majority's reason for concluding that the indictment must allege the basis for joinder. The majority reached its decision primarily based on the demurrer statute, ORS 135.630, and its relationship to the joinder statute. *Id*. at 113-14. ORS 135.630(2) provides, as relevant here, that a "defendant may demur to [an indictment] when it appears upon the face thereof *** that it does not substantially conform to the requirements of ORS *** 132.560." As that text suggests, "[w]hen ruling on a demurrer, a trial court cannot consider facts beyond those alleged in the charging instrument." *Warren*, 364 Or at 113 (citing *State v. Pinnell*, 319 Or 438, 444, 877 P2d 635 (1994)). For that reason, in *Warren*, the majority concluded that "the legislature intended that a trial court would be able to determine, from the face of an indictment, whether the indictment complies with the joinder statute," and consequently, the indictment must allege the basis for joinder. *Id*.

By contrast, it is not clear whether, or how, a defendant could demur to the charging instruments when a state moves to consolidate pursuant to ORS 132.560(2). We have explained that, to challenge a state's motion to consolidate two or more charging instruments pursuant to ORS 132.560(2), "[t]he defendant may oppose consolidation, if given the opportunity, or may move to sever once the charging instruments are consolidated." *State v. Brown*, 326 Or App 46, 49, 531 P3d 178, *rev den*, 371 Or 332 (2023). In opposing consolidation, the defendant may argue that the consolidation of charging instruments "is improper because the joinder requirements are not met, ORS 132.560(1), or that the defendant is substantially prejudiced by the joinder, ORS 132.560(3)." *Id*. As far as we are aware, no Oregon appellate case has addressed an attempt by a defendant to demur to charging instruments—for failure to meet the

pleading requirement for joinder—when the state has moved to consolidate them.

Finally, although we have never expressly been asked to decide whether a trial court is limited to the charging instruments when deciding to consolidate two or more cases, our case law indicates that, in addressing challenges to consolidation, we have not limited ourselves to the charging instruments. In other words, we have regularly held that the state has met the requirements of ORS 132.560(2) based on information not present on the face of the indictments. *See, e.g.*, *Brown*, 326 Or App at 51 (noting that the trial court and Court of Appeals considered the state's additional allegations "[i]n an attached affidavit" to its motion to consolidate); *Dewhitt*, 276 Or App at 378, 385-86 (affirming a trial court's ruling when, in denying defendant's motion to sever, the trial court noted that "on the face of it" the charges did not necessarily rise to a common scheme or plan, but the charges were "connected together by the time and by the witnesses [and] investigation," and there was substantial "overlapping proof"). In addition, we looked beyond charging instruments in deciding whether consolidation was proper in cases decided under the prior version of the statute, which, under the Supreme Court's reasoning in *Warren*, reflected the same procedural requirements as the current version. *Warren*, 364 Or at 127; *see, e.g.*, *State v. Linthwaite*, 52 Or App 511, 518, 628 P2d 1250 (1981), *aff'd in part, rev'd in part on other grounds*, 295 Or 162 (1983) ("*[T]he evidence* here discloses that all of the charges consolidated for trial were closely linked in time, place and circumstance. * * * By reference to their factual interrelation, we conclude the charges are unitary. (Emphasis added.)); *State v. Eusted*, 12 Or App 351, 354, 507 P2d 60 (1973) ("In the present case *there was nothing in the record* at the time the sua sponte consolidation order was made to warrant ordering the consolidation of the two indictments." (Emphasis added.)); *State v. Bishop*, 16 Or App 310, 314-15, 518 P2d 177 (1974) (determining that consolidation was in error when "there [was] no evidence" that the two charges constituted a single transaction because the "charges * * * *have not been proved* closely enough linked in time, place and circumstances to be tried together over defendant's objection" (emphasis added)).

Based on our reading of the consolidation statute, along with the relevant case law analyzing demurrer, joinder, and consolidation, we conclude that ORS 132.560(2) does not limit the trial court to the face of the indictments when determining whether two indictments "are found in" one of the circumstances set out in ORS 132.560(1)(b)(A) to (C). Thus, in this case, the trial court did not err in considering information beyond the indictments on the state's motion to consolidate. Defendant advances no alternative argument about the proper scope of the trial court's inquiry beyond the face of the indictments, and, accordingly, we express no opinion on what limits may apply to the trial court's evaluation of information that is not in the indictments.

2. *Common scheme or plan*

We now turn to whether the trial court erred in consolidating the three charging instruments based on the state's argument that the acts alleged in the witness-tampering and contempt charges consisted of a "common scheme or plan" to get A to withhold or offer false testimony on the rape charge in which A was the victim.

A trial court may order two or more charging instruments consolidated when the offenses charged are "alleged to have been committed by the same person and are \*\*\* [b]ased on two or more acts or transactions connected together or constituting parts of a common scheme or plan." ORS 132.560(2); ORS 132.560(1)(b)(C). Offenses are "connected together or constituting parts of a common scheme or plan" when they are "logically related, and there is a large area of overlapping proof between them." *Dewhitt*, 276 Or App at 383 (internal quotation marks and citation omitted). One instance where charges are "logically related" is where the "later charges stem from, or are otherwise precipitated by, an earlier charge." *Id*. at 384-85 (citing *State v. Wittwer*, 214 Or App 459, 463, 166 P3d 564 (2007)).

In this case, because the conduct alleged in the witness tampering and contempt charges involved defendant contacting A to prevent her testimony on the rape charge, defendant's witness tampering and contempt charges stemmed from his earlier rape charge, and thus, the charges

are "logically related." Much of the evidence of the rape is necessary to prove the witness tampering and contempt charges, and the rape charge "explain[s] the context and motivation for the later occurring events." *Dewhitt*, 276 Or App at 384-85 (citing *Wittwer*, 214 Or App at 463); *see State v. Bingman*, 229 Mont 101, 110, 745 P2d 342 (1987) (affirming consolidation of assault and witness tampering charges because the assault charge "clearly * * * provide[d] a motive for and precipitate[d] the tampering charge"). Therefore, the trial court did not err in consolidating the charging instruments on the basis that they constituted a common scheme or plan.

B.   *Names of Prior Convictions for Impeachment*

Defendant argues the trial court abused its discretion when it admitted the names of defendant's prior convictions for first-degree criminal mistreatment as impeachment evidence pursuant to OEC 609(1).[6] Before trial, defendant filed a motion *in limine* seeking to exclude the names of those prior convictions, arguing that that evidence was more unfairly prejudicial than probative based on OEC 403 balancing.[7] After the trial court engaged in OEC 403 balancing, it denied defendant's motion. During cross-examination of defendant at trial, the prosecutor elicited testimony that defendant had been convicted of criminal mistreatment. The court instructed the jury that it could use defendant's prior conviction "only for its bearing, if any, on the credibility of defendant."

After the parties filed their initial briefs in this case, the Oregon Supreme Court issued *State v. Aranda*, 372 Or 363, 550 P3d 363 (2024), which held that "OEC 609 does not permit trial courts to subject evidence admissible under its terms to OEC 403 balancing." *Id*. at 366. Based on *Aranda*, defendant's argument on appeal fails. The trial

---

[6]  OEC 609(1) provides:

"(1) For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime shall be admitted if elicited from the witness or established by public record, but only if the crime:

"(a) Was punishable by death or imprisonment in excess of one year under the law under which the witness was convicted; or

"(b)  Involved false statement or dishonesty."

[7]  OEC 403 allows the exclusion of relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice."

court necessarily did not abuse its discretion by admitting the name of defendant's offense for impeachment purposes, because OEC 403 does not provide a basis for the trial court to exclude the OEC 609 evidence. In other words, because evidence admitted pursuant to OEC 609 is not subject to OEC 403 balancing, the trial court did not err in admitting that evidence.[8] Therefore, we affirm the trial court's admission of the names of defendant's prior convictions for purposes of impeachment under OEC 609.

## C. *Prosecutor's Statements During Rebuttal Argument*

Defendant argues that the prosecutor made arguments during rebuttal that denied him a fair trial. During trial, the court admitted testimony about statements that A had made to the SANE nurse about defendant taking her clothes off, overruling defendant's hearsay objection to that testimony. In his closing arguments, defendant argued that the jury should not believe A, because she had lied to the SANE nurse when she did not disclose that she had used cocaine and a sex toy with defendant prior to the rape. In rebuttal, the prosecutor argued as follows:

> "[PROSECUTOR:]   *** The testimony both by [A] was that she had to relent to the sexual intercourse and the statement to the SANE nurse.
>
> "Now, a reason why this statement comes in is because there's an exception to the hearsay rule for medical diagnosis. *People who are talking to their doctors and nurses for medical evaluation are, under the law, decided that they're going to tell the truth when they're asking for medical help.* That's why this statement comes in. And in this statement, you will see it comes in as substantive evidence of what happened."

---

[8] In response to the Supreme Court's decision in *Aranda*, defendant argues that "the Due Process Clause created a legal requirement for the trial court to exclude the evidence." According to defendant, "the trial court was required to exclude the evidence as a matter of fundamental fairness and, therefore, admitting it violated due process." We conclude that "the admission of defendant's prior convictions under OEC 609 was [not] 'so extremely unfair as to deprive *** defendant of a fundamentally fair trial.'" *State v. Dehaven*, 333 Or App 389, 391-92, 553 P3d 62, *rev den*, 373 Or 81 (2024) (concluding the same) (quoting *Aranda*, 372 Or at 401); *see also Aranda*, 372 Or at 380 ("[W]e see little indication that the Supreme Court would hold that permitting a defendant's testimony to be impeached with the defendant's felony conviction history violates the Due Process Clause.").

(Emphasis added.) The prosecutor immediately followed that statement with a discussion about defendant tampering with A to "keep her from being here" and convince her to "offer false testimony in order to help his case." The prosecutor then compared A's testimony in trial to her earlier statement to the nurse. Defendant did not object to the prosecutor's statements.

On appeal, defendant argues that the prosecutor's argument constituted impermissible vouching because it expressly told the jury that the victim's statements were true. In addition, defendant argues that the prosecutor's argument misstated the law—*viz.*, the prosecutor's misunderstanding of the hearsay exception. Defendant argues that the prosecutor's misconduct could not be cured by a jury instruction for three reasons: (1) the prosecutor misstated the law on a key point, (2) the misconduct occurred during rebuttal argument, and (3) this was a close case because the jury acquitted defendant of strangulation and convicted him of the lesser offense of fourth-degree assault instead of second-degree assault.

"[I]n deciding a defendant's guilt or innocence, a jury may consider only facts properly received in evidence," and "a prosecutor may not encourage the jury to decide the case on an improper basis." *State v. Chitwood*, 370 Or 305, 314, 518 P3d 903 (2022) (citations omitted). Prosecutorial misconduct includes "'any activity by the prosecutor which tends to divert the jury from making its determination of guilt or innocence by weighing the legally admitted evidence in the manner prescribed by law.'" *State v. Brunnemer*, 287 Or App 182, 187-88, 401 P3d 1226 (2017) (quoting *State v. Smith*, 4 Or App 261, 264, 478 P2d 417 (1970)). Arguments that misstate the law are impermissible. *See State v. Smith*, 334 Or App 89, 94, 554 P3d 817 (2024) (determining that the prosecutor's statements that misstated "a foundational principle of criminal law" were impermissible).

In this case, the prosecutor's arguments were improper because they misstated the law as to how the jury could view the hearsay evidence. The prosecutor's arguments in this case could have left the jury with the impression that, "under the law," A was telling the truth when she

talked to the SANE nurse because the statements were admitted despite being hearsay. That is an incorrect statement of law, and as such, the argument was impermissible. [9]

A prosecutor's closing argument constitutes plain error only when "the prosecutor's comments were so prejudicial that an instruction to disregard them would not have been sufficiently curative to assure the court, in its consideration of all the circumstances, that the defendant received a fair trial." *Chitwood*, 370 Or at 312. "In other words, prosecutorial statements that were improper but *curable* are not an appropriate subject of plain-error review, because, in such circumstances, the defendant was not denied a fair trial." *State v. Durant*, 327 Or App 363, 365, 535 P3d 808 (2023) (emphasis in original). And "[g]enerally, a proper jury instruction is adequate to cure any presumed prejudice from a prosecutor's misconduct," *State v. Davis*, 345 Or 551, 583, 201 P3d 185 (2008), *cert den*, 558 US 873 (2009), because we "assume that a jury has followed a court's curative instruction unless there is an 'overwhelming probability that the jury was incapable of following the instruction.'" *State v. Harris*, 303 Or App 464, 467, 461 P3d 1080, *rev dismissed*, 367 Or 291 (2020) (quoting *State v. Garrison*, 266 Or App 749, 757, 340 P3d 49 (2014), *rev den*, 356 Or 837 (2015)).

Although the prosecutor made an impermissible argument, we conclude that the argument was not so prejudicial that a curative instruction would not have ameliorated the error, and thus it is not obvious that the trial court was required to *sua sponte* declare a mistrial based on the comment. *See Chitwood*, 370 Or at 321 ("The error was one of law because the statements were so prejudicial that, if defendant had objected and moved for a mistrial, the trial court would have committed legal error had it denied the motion.").

This case is distinguishable from those in which we have determined that the improper arguments denied defendant a fair trial and concluded it was beyond dispute that a mistrial was required. Although the prosecutor's argument

---

[9] We reject defendant's argument that the improper statement constituted vouching; it was a misstatement of the law, rather than an expression of any personal opinion. *See Davis v. Cain*, 304 Or App 356, 363, 467 P3d 816 (2020) ("'Vouching' refers to the expression of one's personal opinion about the credibility of a witness.").

was prejudicial because it implied that, under the law, the victim told the truth to the SANE nurse, the argument did not require a mistrial because it was brief and curable if defendant had objected. *Cf. State v. Montgomery*, 327 Or App 655, 661, 536 P3d 627 (2023) ("We conclude that the prosecutor's *repeated* inappropriate statements of the prosecutor's personal view that defendant was a liar were so prejudicial that, if defendant had objected and moved for a mistrial, the trial court would have abused its discretion in denying the motion." (Emphasis added.)); *Smith*, 334 Or App at 95 (concluding that the prosecutor's "single misstatement" was "a straightforward and potentially easy-to-dispel misstatement \*\*\*."). Nor did it identify inadmissible evidence or implicate "bias, emotions, or other improper bases for deciding the case." *Smith*, 334 Or App at 95; *see Chitwood*, 370 Or at 314-17 (in rebuttal closing, the prosecutor relied on facts not in evidence, encouraged the jury to decide the case on an improper basis, and distorted the state's burden of proof).

Therefore, it is not obvious and beyond dispute that the prosecutor's comment was "so prejudicial as to have denied defendant a fair trial." *Durant*, 327 Or App at 371. In other words, it is not obvious that a mistrial was required based on the prosecutor's statement. Accordingly, defendant has not established plain error.

D.    *Probation Revocation Sentence*

Defendant argues that the trial court plainly erred when it ordered 36 months of prison and 36 months of post-prison supervision (PPS) for a Class C felony in his probation revocation case (Case No. 19CR48405). *See* ORAP 5.45(1). The state concedes that the trial court plainly erred because the 72-month sentence exceeds the 60-month statutory maximum for defendant's crime. ORS 163.205(3); OAR 213-005-0002(4); OAR 213-008-0003(2). But the state argues that we should not exercise our discretion to correct the error, because the erroneous sentence is to be served concurrently with other, lawful sentences, so correcting that sentence "would not reduce the length of [defendant's] overall sentence." *State v. Reed*, 317 Or App 453, 505 P3d 444 (2022), *rev'd on other grounds*, 370 Or 197 (2023).

We agree with the parties that this is plain error. *See State v. Vanornum,* 354 Or 614, 629, 317 P3d 889 (2013) ("For an error to be plain error, it must be an error of law, obvious and not reasonably in dispute, and apparent on the record without requiring the court to choose among competing inferences."). Our review of the record indicates that the trial court ordered defendant's sentence to run consecutively to the sentences that the court imposed in the other cases.[10] As the sentence is consecutive, correcting the sentence would, in fact, reduce the length of defendant's overall sentence. Thus, we exercise our discretion under *Ailes v. Portland Meadows, Inc.*, 312 Or 376, 823 P2d 956 (1991), to correct the error for the same reasons we have corrected such error in other cases. *See State v. Vierria*, 278 Or App 656, 668, 379 P3d 667 (2016) (exercising our discretion to correct the plain sentencing error); *see also State v. Gutierrez*, 243 Or App 285, 288, 259 P3d 951 (2011) (concluding that the state has no interest in having defendant serve an unlawful sentence); *State v. Newson*, 218 Or App 393, 395-97, 180 P3d 67 (2008) (noting the gravity of the error, while also concluding that there was no possible strategic reason not to object; no legal way for trial court to impose the same sentence; and no suggestion that defendant invited the error).

Reversed and remanded for resentencing in Case Number 19CR48405; otherwise affirmed.

---

[10] At oral argument for this appeal, the state conceded that, if the sentences were consecutive, we should exercise our discretion to correct the error.