No. 798 September 4, 2025 301

*This is a nonprecedential memorandum opinion pursuant to ORAP 10.30 and may not be cited except as provided in ORAP 10.30(1).*

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

FELIPE DE JESUS JEFFERSON,
aka Felipe Jesus Jefferson,
*Defendant-Appellant.*

Curry County Circuit Court
22CR58531, 23CR26684; A182185 (Control), A182195

Cynthia Lynnae Beaman, Judge.

Submitted on June 24, 2025.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Matthew Blythe, Deputy Public Defender, Oregon Public Defense Commission, filed the brief for appellant.

Dan Rayfield, Attorney General, Benjamin Gutman, Solicitor General, and Timothy A. Sylwester, Assistant Attorney General, filed the brief for respondent.

Before Tookey, Presiding Judge, Kamins, Judge, and Jacquot, Judge.

JACQUOT, J.

Vacated and remanded for entry of judgment of conviction on Count 6 omitting "constituting domestic violence"; otherwise affirmed.

**JACQUOT, J.**

In this consolidated criminal appeal,[1] defendant was convicted of violent crimes and several other offenses following a jury trial. He raises three assignments of error. In his first and second assignments of error, defendant argues that the trial court erred when it allowed the prosecutor to refer to defendant's head injury as "uncorroborated" during closing argument and when it allowed the prosecutor to give a definition of "conscious objective" during closing argument. In his third assignment of error, he argues that the trial court erred when it incorrectly entered a conviction for strangulation constituting domestic violence instead of strangulation for Count 6. We vacate and remand for entry of a judgment of conviction on Count 6 that omits the reference to domestic violence, and we otherwise affirm.

Defendant was involved in a single vehicle car crash, during which he sustained multiple injuries. Law enforcement responded to a call about a person waking down the road covered in blood and found defendant. Defendant had several visible injuries, including cuts on his forearm and back, but no obvious head injuries other than a few scratches on his face.

At the hospital, defendant was given stitches and a shot for a cut on his forearm. Defendant testified at trial that he received stitches, anesthesia and four other shots. After several hours, defendant was released from the hospital, booked into jail, and subsequently released. Defendant's sister picked him up from jail. At around the same time that defendant was released from jail, officers found defendant's truck on its side in a drop-off with the air bags deployed and a hole through the windshield.

The acts relevant to the conviction at issue in this appeal began after defendant was picked up from jail by his sister. At trial, the state produced evidence showing that when defendant and his sister arrived at their apartment, while still in her parked vehicle, defendant attacked his sister and repeatedly assaulted her until she escaped.

---

[1] Defendant only seeks relief in Case No. 22CR58531; he does not seek relief in Case No. 23CR26684. The judgment in Case No. 23CR26684 is therefore affirmed.

Defendant's sister sustained substantial injuries from the assault as well as short term memory loss.

At trial, defendant testified that he sustained a head injury when he crashed his truck and that he received several other injuries while he was breaking out of it. He stated that after the hospital visit on the way to the apartment, he lost consciousness and has no memory of assaulting his sister. Defendant's theory of the case was that his mental state was affected by his head injury and the medical treatment he received earlier in the day. Defendant was found guilty by a jury on all counts.[2] On appeal, he raises three assignments of error.

In his first and second assignments of error, defendant, for the first time on appeal, challenges two statements made by the prosecutor during closing argument. In his view, both statements improperly undercut his theory of the case.

In the first challenged statement, the prosecutor stated that defendant had an "uncorroborated head injury":

"[PROSECUTOR]:  The question (unintelligible) is did he have intent to kill unless he got in a car wreck several hours before and claims an *uncorroborated head injury*? If someone wrecks a car and several hours later kills someone, (inaudible) is the same. It doesn't say in these instructions anywhere unless he got in a car wreck or unless he doesn't remember."

(Emphasis added.) In the second challenged statement, the prosecutor offered that a particular definition of "conscious objective" should be applied to determine defendant's requisite mental culpability:

"[PROSECUTOR]:  So what is intentional behavior? You've heard a lot about this. Did he act with a conscious objective to kill his sister? Did he act with a conscious objective to cause her serious physical injury? Well, there's

---

[2]  A jury found defendant guilty of attempted second-degree murder constituting domestic violence, ORS 163.115; ORS 161.405 (Count 1), first-degree assault constituting domestic violence, ORS 163.185 (Count 2), second-degree assault constituting domestic violence, ORS 163.175 (Count 3), third-degree assault constituting domestic violence, ORS 163.165 (Count 4), unlawful use of a weapon, ORS 166.220 (Count 5), strangulation, ORS 163.187 (Count 6), resisting arrest, ORS 162.315 (Counts 7 and 8), and aggravated harassment, ORS 166.070 (Count 9). Counts 3, 4, and 5 were merged into Count 2 in the judgment of conviction.

two parts of that, okay? And there's no statutory definition for conscious objective. *There's no statutory definition. They have ordinary meaning, common use, okay?*

*Was he conscious? He's conscious. He's up, moving around, dragging her around, punching her. He's clearly conscious in the videos.* Was it his objective to kill her? He tells her that that's his objective. So that's all that the State has to prove. There's no more."

(Emphasis added.)

This court has discretion whether to review unpreserved arguments for plain error. *State v. Vanornum*, 354 Or 614, 630, 317 P3d 889 (2013). "For an error to be plain error, it must be an error of law, obvious and not reasonably in dispute, and apparent on the record without requiring the court to choose among competing inferences." *Id.* at 629. For unpreserved challenges to prosecutorial statements, plain error review is permitted if "the prosecutor's comments were so prejudicial as to have denied defendant a fair trial"; that is, "if the defendant had made a motion for a mistrial, the trial court would have erred, as a matter of law, in denying it." *State v. Chitwood*, 370 Or 305, 312, 518 P3d 903 (2022) (internal quotation marks omitted). Further, it must be proved that the prosecutorial statements were not just "improper," but that they were "so prejudicial that an instruction by the trial court to the jury to disregard the comments 'would not have been sufficiently curative' to ensure that the defendant received a fair trial." *State v. Perez*, 373 Or 591, 605, 568 P3d 940 (2025) (quoting *Chitwood*, 370 Or at 312) (internal quotation marks omitted).

Relying on *State v. Mayo*, 303 Or App 525, 537-38, 465 P3d 267 (2020), defendant first argues that the prosecutor's statement about his "uncorroborated head injury" improperly shifted the burden of proof and suggested that defendant's testimony be discredited because he did not offer evidence to support the injury or mental state at trial.[3] The state, relying on *State v. Skotland*, 337 Or App 368, 371-72, 562 P3d 1118 (2025), responds that the prosecutor's

---

[3] Defendant relies on *Mayo* to illustrate how prosecutorial statements in that case share a similar nature to the prosecutorial statements here. *Mayo*, 303 Or App at 537-38. However, *Mayo* is distinguishable because unlike this case, the comments in *Mayo* were analyzed in a preserved posture. *Id.* at 526, 529.

statement was a singular, passing comment that provided a fair criticism of defendant's testimony and reminded the jury of the evidence that was presented at trial.

"[A] prosecutor should never argue or suggest to the jury that the defendant has the burden of proving anything, except when the law places the burden of proving an affirmative defense on the defendant" because "[s]uch a comment undermines the presumption of innocence provided by our constitution." *Perez*, 373 Or at 619 (Bushong, J., concurring). Here, the prosecutor's statement was not obviously improper—meaning that although some jurors could have understood the statement to distort the burden of proof, the statement did not obviously shift the burden of proof. *See Perez*, 373 Or at 607 (stating that for plain error review, "it is not enough if, in hindsight, we might agree that some jurors could have understood *** that the challenged comments somehow distorted the burden of proof or placed the state on equal footing with defendant in the jury's eyes"); *Skotland*, 337 Or App at 370-71 (determining that the prosecutor's statement was not obviously improper in that it could be understood as questioning the credibility of the defendant's testimony rather than suggesting that the defendant needed to produce corroborating evidence).

Second, defendant argues that that the prosecutor's statements about "conscious objective" misstated the law and mislead the jury to believe that since defendant was conscious, defined by the prosecutor to mean awake and moving, he had the objective intent to kill or harm his sister. *See State v. Worth*, 231 Or App 69, 76, 218 P3d 166 (2009), *rev den*, 347 Or 718 (2010) (concluding that a prosecutor cannot misstate the law). He then turns to *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009) to establish the framework for how a statute is interpreted and applies the *Gaines* framework to argue that the prosecutor's statements about "conscious objective" were inconsistent with the text and context of its definition in ORS 161.085(7).[4] He concludes his argument by pointing out that the misstatement

---

[4] ORS 161.085(7) states, "'Intentionally' or 'with intent,' when used with respect to a result or to conduct described by a statute defining an offense, means that a person acts with a *conscious objective* to cause the result or to engage in the conduct so described." (Emphasis added.)

of law gave an inaccurate description of requisite mental culpability, which made it easier for the state to meet their burden of proof, undermined defendant's theory of defense, and decided the outcome for Counts 1 and 2 and affected the outcome for Counts 5, 7, and 8. The state responds that "conscious objective" does not mean anything other than what it says, and that the prosecutor conveyed exactly that meaning to the jury. It relies on *State v. Serrano*, 355 Or 172, 182, 324 P3d 1274 (2014), *cert den*, 576 US 1037 (2015), to argue that because defendant did not cite relevant case law providing a clear definition of "conscious objective," his argument does not constitute plain error, in that any error, if it did exist, was not obvious and not reasonably in dispute.

"[A] prosecutor should never attempt to usurp the role of the trial judge by attempting to instruct the jury on the law," and "it is never permissible for a prosecutor to argue to the jury that the law is anything other than what is contained in the jury instructions." *Perez*, 373 Or at 618 (Bushong, J., concurring). We acknowledge that there is not a statutory definition for "conscious objective" and that the jury was not given an instruction that defined the word. The definition offered by the prosecutor likely misstated or distorted the law and could have confused the jurors about defendant's requisite mental culpability. *See State v. Pedersen*, 242 Or App 305, 318, 255 P3d 556, *rev den*, 351 Or 254 (2011) (determining that for attempted aggravated murder, "[t]he instruction directs that when an intentional offense is defined by a 'result' or 'conduct,' a person must act 'with a conscious objective to cause the result or to engage in the conduct so described'"); *see also State v. Durst*, 248 Or App 689, 696-97, 73 P3d 370 (2012) (explaining that even if the jury confused conduct and result elements that the jury's understanding of what the state needed to prove would not have been affected because, "it would have understood, from the definition of 'intentionally,' that defendant had to 'act with a conscious objective *** to' 'place another person, [the victim], in fear of imminent serious physical injury'" (ellipsis and brackets in *Durst*)).

Nevertheless, the prosecutor's statement was not so prejudicial that a curative instruction would not have

remedied the error if defendant had objected. *See State v. Buck*, 338 Or App 314, 330-31, 566 P3d 682, *rev den*, 374 Or 143 (2025) (holding that prosecutor's brief misstatement of the law during closing rebuttal argument was curable had an objection been raised). Therefore, although the prosecutor's definition of "conscious objective" was likely improper, if defendant had objected at trial, a curative instruction could have corrected any error.

In his third assignment of error, defendant challenges the entry of a conviction for strangulation constituting domestic violence and argues that the domestic violence element was erroneously added to the judgment. "We review sentencing decisions for legal error." *State v. Tison*, 292 Or App 369, 372, 424 P3d 823, *rev den*, 363 Or 744 (2018).

Defendant was charged with strangulation constituting domestic violence. At trial, the prosecutor withdrew the domestic violence element, but the judgment included a conviction of strangulation constituting domestic violence for Count 6.

The state concedes that the addition of the "constituting domestic violence" element for Count 6 in the judgment was error. We accept the state's concession and note that preservation is excused because the error appeared for the first time in the judgment. *State v. Baccaro*, 300 Or App 131, 134 n 2, 452 P3d 1022 (2019); *see State v. Selmer*, 231 Or App 31, 34-35, 217 P3d 1092 (2009), *rev den*, 347 Or 608 (2010) (holding that the rules of preservation do not apply when the court issues an order or judgment containing the complained-of error, because there is no practical way for the party to raise such an issue and thus, the judgment should be vacated and remanded for corrected entry). The state does argue, however, that the addition of "constituting domestic violence" in the judgment of conviction as to Count 6 is an "inconsequential typographical error" that does not "entitle[] *** defendant to employ the appellate process to have this court reverse the judgment and order the correction." (Emphasis omitted.) Suffice it to say, we disagree that the addition of "constituting domestic violence" in a judgment of conviction is an "inconsequential typographical error" that does not entitle defendant to appellate relief. *See*

*also State v. James Franklin Neighbors*, 283 Or App 488, 489, 388 P3d 1250 (2017) (concluding that the judgment should be remanded for corrected entry because a clerical error occurred when "constituting domestic violence" was added to an offense when the record reflected that the domestic violence allegation would not be pursued). We therefore vacate and remand for entry of a corrected judgment for Count 6, but otherwise we affirm.

Vacated and remanded for entry of judgment of conviction on Count 6 omitting "constituting domestic violence"; otherwise affirmed.